# JACOB BREMER *et al.*

*v.*

## THE CALUMET AND CHICAGO CANAL AND DOCK COMPANY.

*Filed at Ottawa March 26, 1889.*

1. CHANCERY—*decree granting relief upon cross-bill—equivalent to a dismissal of the original bill.* The owner of land sold the same, taking notes for the unpaid price, secured by deed of trust on the premises. The purchaser laid out the land in lots and blocks, and his grantee sold two lots to B. Default having been made in paying the purchase money, the trust deed was foreclosed, and the trustee conveyed the premises to the creditor, who was the original vendor. The latter filed his bill to set aside the deed to B. of the lots, as a cloud on the title. B.'s grantor was made a party, and a cross-bill was filed to set aside the trustee's deed. On the hearing, no decree was made as to the bill to set aside the deed to B., but the trustee's sale was set aside on certain conditions as to payment of the sum due on the mortgage : *Held,* that while there was no final decree for the dismissal of the original bill against B., the practical effect of the decree as rendered was to dismiss such bill in case the redemption was made.

2. SAME—*bill to set aside trustee's sale, and for redemption—relief granted upon terms.* Where a trustee's sale under a power in a deed of trust is set aside, in consequence of irregularities and defects in his notice of the sale, and the former owners are allowed to redeem, it will be upon equitable terms,—that the latter shall pay the sum due under the deed of trust, and all taxes paid by the purchaser, with interest thereon, within a reasonable time, or that the complainant shall be forever barred.

3. SAME—*failure to make redemption—order of dismissal.* A decree setting aside a trustee's sale of land, after directing the payment of the sum required to be paid to redeem, should provide that in default of such payment within the time allowed, the bill be dismissed.

4. So upon cross-bill to set aside a trustee's sale and allow a redemption, a decree giving affirmative relief to the defendant, on the default of the complainants to pay the redemption money, by requiring one of them to convey his title, is unauthorized. The decree should provide simply for the dismissal of the bill on such default.

5. SAME—*time to be allowed for redemption—on bill to redeem.* Where a trustee's sale and deed under a power is set aside for irregularities and defects in the notice of the sale and the proceedings, the mortgagor, and those claiming under him, will not be entitled to twelve

months in which to pay the redemption money. The usual time allowed is six months, but that is not obligatory in all cases. In this case ninety days were allowed, and it was held no abuse of the discretion vested in the court.

6. SAME—*relief under general prayer.* The fact that the court, on bill to set aside a sale under a trust deed and to redeem, does not find the right to the relief sought precisely as alleged in the bill, will not defeat the right to a decree, under a general prayer for relief.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

This was a bill by the Calumet and Chicago Canal and Dock Company, to the March term, A. D. 1884, of the Superior Court of Cook county, in which it was, among other things, alleged, that it is a corporation organized and existing under the laws of the State of Illinois, and that it is the owner in fee of the following described real estate in Cook county, Illinois, to-wit: Lots numbered one (1) and two (2), in block 47, in Ironworkers' addition, being a subdivision of the west half of the north-west quarter of section 17, town 37 north, range 15, east of the third principal meridian, and which said lots are vacant and unoccupied; that on the 10th day of March, A. D. 1874, it was the owner in fee of the west half of the north-west quarter of section seventeen (17), in township thirty-seven (37) north, range 15, east of the third principal meridian, in the county of Cook, and State of Illinois; that on said day, complainant, owning said premises last above described, sold and conveyed the same to one Charles G. Harris, by warranty deed of that date, duly executed and delivered, for the price and consideration of $40,000, as expressed in said deed, and which said deed was recorded in the recorder's office of said county of Cook, May 28, 1874, in book 381, on page 442, as document 170,747, and the said Charles G. Harris, grantee named in said deed, to evidence and secure the remainder and unpaid purchase money of said premises, executed and delivered to your complainant his three promissory notes of even

30—127 ILL.

date with said deed, for the sum of $10,000 each, payable to the order of complainant, at its office in the city of Chicago, each of said notes bearing interest at the rate of ten per cent per annum, and payable, respectively, March 12, 1875, March 12, 1876, and March 12, 1877; and also, to further secure said unpaid purchase money, executed and delivered a deed of trust, dated March 12, 1874, conveying said property to George W. Smith, as trustee, to secure the payment of the said above described notes, and with power to the said trustee to sell and convey said premises in case of default in payment of the said unpaid purchase money by said deed intended to be secured, as will more fully and particularly appear by reference to said deed of trust, which was duly executed and delivered by said Charles G. Harris, and recorded in the office of the recorder of said county of Cook, on the 28th day of May, 1874, in book 387, on page 147, as document 170,747, and a copy of which, with a copy of the said notes, is herewith filed; that subsequently,—to-wit, on or about the 10th day of March, 1875,—the said Charles G. Harris and one William H. Colehour executed and delivered to George H. Sturges, in trust for Samuel Hale, Joseph H. Brown and Joseph T. Brown, a warranty deed for the south quarter of said west half of said north-west quarter of section seventeen (17), in trust, to be conveyed by said trustee to a corporation thereafter to be formed, as more particularly set forth in said deed recorded in the recorder's office of said county of Cook, June 5, 1875, in book 512, on page 268; that subsequently,—to-wit, on or about the 16th day of October, A. D. 1875,—the said Charles G. Harris, grantee of complainant as aforesaid, executed and acknowledged, in due form, a plat of the remaining sixty acres of said premises, entitled "Ironworkers' addition, being a subdivision of the west half of the north-west quarter of sec. 17, T. 37 N., R. 15, E. of the 3d P. M.," and which plat was approved by the president and board of trustees of the village of Hyde Park, on October 30, 1875, and duly recorded in the

office of the recorder of the said county of Cook on the 26th day of November, A. D. 1875, as document 60,101, the said Charles G. Harris not being then the owner of said premises, except subject to the trust deed above mentioned, and not authorized so to plat the same; that after the acknowledgment by said Charles G. Harris, of said plat, and after the making of the same, and its approval by the president and board of trustees of said village of Hyde Park, and before any sale of any lots in said Ironworkers' addition,—to-wit, on November 6, 1875,—by his deed of that date, the said Charles G. Harris conveyed the west half of said quarter section to one William H. Colehour, which deed was filed for record in the recorder's office of said county of Cook, on November 26, 1875; and complainant avers that the said plat and all conveyances that might be made by the said Harris or the said Colehour of said west half of said north-west quarter, or of lots or blocks in said Ironworkers' addition, were in all respects subject to the lien of the above mentioned trust deed executed to the said George W. Smith, as trustee, to secure the said unpaid purchase money upon said west half of said north-west quarter of said section 17; that after the acknowledgment of said plat by said Harris, and its approval by said president and board of trustees of Hyde Park, and after the execution of said deed by said Harris to said William H. Colehour, the said William H. Colehour sold and conveyed, by warranty deed, said lots one (1) and two (2), in block 47, in said Ironworkers' addition, to one Jacob Bremer, and which said deed bears date the 16th day of November, A. D. 1875, and was recorded in the office of the recorder of said county of Cook on the 27th day of January, A. D. 1876, and which title so conveyed was subject to the lien of said deed of trust of said Harris to said George W. Smith, and to be defeated by sale thereunder, in case of default in the payment of the purchase money thereby secured; and the said William H. Colehour, grantee of said Harris, and the said Harris, having made default in the payment of the note se-

cured by said deed of trust to said George W. Smith, for the sum of $10,000, becoming due on or before March 12, 1875, and also in the payment of the interest on the said note, and on the remainder of the notes not then due, complainant, in pursuance of the right given by said deed of trust so to do, declared the whole amount of said notes, principal and interest, to be due, and requested the said George W. Smith to proceed, under the power given and granted by said deed of trust, to sell said premises to make the said sum of money, principal, interest and expenses, as in and by said deed of trust stipulated, and the said George W. Smith, trustee as aforesaid, did thereupon proceed, under and in accordance with the provisions of said deed of trust, to sell, and did, in pursuance of the power in and by said deed of trust given, and to make said money, interest and costs, on the 25th day of April, A. D. 1876, offer for sale, at public auction, to the highest bidder, for cash, the said premises conveyed by said deed of trust, and at which sale complainant bid for said premises the sum of $30,000, and being the highest bidder therefor, the said premises were, by the said George W. Smith, trustee as aforesaid, sold, and afterwards,—to-wit, on the 25th day of April, A. D. 1876,—conveyed, by the said trustee, to complainant, for the sum of $30,000, and credit given upon the notes of the said Charles G. Harris for the full amount of said sale, less the expenses thereof; and which said deed of the said George W. Smith, trustee, has been duly delivered to complainant, and is recorded in the recorder's office of said county of Cook on the 17th day of May, A. D. 1876 ; and complainant avers, that by said deed complainant became the owner in fee of said premises, and all right and title in and to said premises of the said Jacob Bremer ceased and determined ; and complainant avers, that as owner of said property it has, for convenience, adopted, and does now adopt, the said plat and subdivision of said sixty acres, being the north sixty acres of said west half of said north-west quarter of section 17, town

and range aforesaid; and complainant avers that the said lots one (1) and two (2), in block 47, in said Ironworkers' addition, are vacant and unoccupied, and that complainant is the owner thereof in fee; and complainant further represents that the said deed of conveyance of the said Jacob Bremer is a cloud upon the title of complainant in and to said lots one (1) and two (2), in block forty-seven (47), in said Ironworkers' addition, by reason of the said platting, acknowledging and recording of said Ironworkers' addition, and said deed from William H. Colehour being placed upon the record prior to the deed from said George W. Smith to complainant, and depreciates the value and sale by complainant of said lot. The prayer is that the said Jacob Bremer, whom complainant makes a party defendant to this bill, may be required to make full and direct answer to the same, but not under oath, the answer under oath being waived, and that the said deed of conveyance from the said William H. Colehour to the said Jacob Bremer, of the said premises, may be set aside and declared void, as against complainant, as a cloud upon the title of complainant, and the said deed may be delivered up to be cancelled, to which is added a prayer for general relief.

Annexed is an exhibit of the trust deed to Smith. It recites that it is executed to secure the payment of three promissory notes, for $10,000 each, payable, respectively, on the 12th days of March, in the years of 1875, 1876 and 1877, at the office of the complainant, in Chicago, with interest thereon at ten per cent per annum, after due, until paid. There is also the following provision : "The party of the first part, his heirs, executors, administrators or assigns, shall have the right to pay, from time to time, as he or they desire, upon the principal of the indebtedness hereby secured, whether the same may then be due or not; and upon the payment or tender of any portion of such principal at the place where the same is made payable, (all accrued interest having been paid,) there shall be released by said trustee or his successor, for every $500 so

paid of principal, one acre of said land, to be selected by said Harris, his heirs, executors, administrators or assigns." Exhibits were also made of three promissory notes, for $10,000 each, dated March 12, 1874, payable, respectively, March 12, 1875, March 12, 1876, and March 12, 1877, with interest at eight per cent per annum, payable annually, and interest at ten per cent per annum after due. Then follows, as an exhibit, a copy of the deed of Smith, trustee, pursuant to sale under the trust deed to the complainant.

The defendant, Bremer, answered the bill, denying its material allegations, and then filed his cross-bill, in which it is alleged, "that on or about the 16th day of November, A. D. 1875, one William H. Colehour sold, and by warranty deed, in the form prescribed by the statute of this State, conveyed, unto cross-complainant, for the consideration of $ . . . . . . ., lots 1 and 2, in block 47, in Ironworkers' addition to South Chicago, mentioned in said original bill. And about the same time, said Colehour, by similar warranty deeds, for the consideration therein expressed, sold and conveyed unto cross-complainant divers other lots in said subdivision; that at and before the selling of said lots to cross-complainant, and to induce cross-complainant so to purchase, said Colehour and the Calumet and Chicago Canal and Dock Company represented unto cross-complainant that the title to said lots was free and clear in said Colehour, except a mortgage, amounting to $50 per lot, on each lot in said subdivision, with interest thereon from a date not earlier than March 12, 1874, held by said Calumet and Chicago Canal and Dock Company, and that upon payment of the amount so secured on each lot, not exceeding $50 on any lot, the said lots should be severally released from all incumbrances in favor of said company, and be absolutely free and clear; and cross-complainant, relying on such representations of said Colehour and said company, purchased said lots, and paid said Colehour a large sum of money therefor, and in consideration of the money so paid,

received the deeds aforesaid; and cross-complainant charges the fact to be, that there was not then, and is not now, but $50 of principal secured to said company on either of said lots so conveyed to cross-complainant, with interest thereon from the date of cross-complainant's said purchase; and cross-complainant has often offered to pay to said company or to said Colehour the sum of $50 per lot for each of said lots 1 and 2, as well as for each of the other lots so purchased by cross-complainant, with all interest due on such lots, respectively, and has demanded from said company and from said Colehour a release of said lots 1 and 2 from all the incumbrances in favor of said company, upon such payment of $50 per lot for each of said lots, with the interest thereon, which sums of money cross-complainant repeatedly tendered to said company for such release of said lots, and like tender and offers cross-complainant has often made for each of said other lots so purchased by cross-complainant as aforesaid, and said company has in some instances accepted the amount so offered, and released the lots for which the same was offered; and cross-complainant is informed and believes, and charges the truth to be, that said Colehour has paid to said company the amount due on said lots; and cross-complainant charges that said Colehour was and is, as between cross-complainant and him, said Colehour, bound to pay said sum so secured on each of said lots, and to procure a release thereof from all claims of said company; and cross-complainant hath often requested him so to do, but said Colehour pretends that said company will not accept such payment and make such releases, and he well hoped that said company and said Colehour would have complied with his requests in the premises, as in justice and equity they ought to have done." There is then a charge of confederacy between the canal and dock company and Colehour.

The prayer is, that the canal and dock company and William H. Colehour be required to answer, but without oath;

that they be summoned, and that the cross-complainant's title to the lots be quieted and set at rest; that it may be determined that the claim of the canal and dock company is only a mortgage or security for the payment of $50 per lot of principal; that the amount secured by each lot be ascertained, and Colehour required to pay the same, and that upon such payment the canal and dock company be required to release and convey to cross-complainant title in the lots, and for general relief.

William H. Colehour answered, admitting the allegations of the cross-bill, except those charging confederacy and that he was liable to pay the amount due on the mortgage on the lots in question.

The Calumet and Chicago Canal and Dock Company answered, admitting that William H. Colehour conveyed lots 1 and 2, in Ironworkers' addition, etc., to Bremer, but whether he at the same time sold and conveyed other lots, it is not advised. It denies that respondent, in order to induce said Bremer to purchase, represented to said Bremer that the title to said lots was free and clear in said Colehour, except a mortgage held by this respondent, and amounting to $50 per lot, and that upon payment of a sum not exceeding $50 per lot the said lots should be severally released from all incumbrances in favor of this respondent. What representations the said Colehour may have made to said Bremer, and how much said Bremer may have relied on such representations in purchasing said lots, or how much money said Bremer may have paid said Colehour, this respondent has no means of knowing, and can not, therefore, either admit or deny the allegations of said cross-bill in relation thereto, and leaves said Bremer to make such proof thereof as he is advised may be material, but respondent avers that the same, if proven, are not material to the respondent; and respondent denies the allegation of said cross-bill, that there was not then, and is not now, but $50 secured on each of said lots named in its original bill herein,

with interest thereon from the date of said Bremer's purchase. The remaining material allegations are also denied.

William H. Colehour then also filed his cross-bill, the allegations of which were put in issue by the answer of the Calumet and Chicago Canal and Dock Company. Proper replications were filed to the several answers.

After some depositions had been taken, and on the 15th of January, 1885, the court granted leave to William H. Colehour to file his amended cross-bill. In this, after giving a statement of the preceding pleadings in the case, it is alleged as follows:

"That on or about March 10, 1874, said company being the owner in fee of the west half of the north-west quarter of section seventeen (17), in township thirty-seven (37) north, range fifteen (15), east of the third principal meridian, situate in Cook county, subject to a large mortgage and a tax title, by connected title appearing of record, derived from the United States, agreed with said Roby to sell and convey said land to Charles G. Harris for $40,000, one-fourth to be paid in cash when a clear title should be conveyed, and the balance, of $30,000, in the notes of the said Harris, such notes to be payable to said company or order, to be for $10,000 each, and payable, respectively, in one, two and three years from the date of such sale, without interest before maturity, and bearing interest after maturity at the rate of ten per cent per annum; that pursuant to such arrangement said company, on or about March 16, 1874, signed and sealed its deed of said land to said Harris, mentioned in the above named bill, bearing date March 10, 1874, and said Harris executed his three promissory notes, bearing date March 12, 1874, for $10,000 each, payable to the order of said company, and due in one, two and three years from the date thereof, respectively, such notes bearing no interest before their maturity, respectively, but bearing interest after maturity at the rate of ten per cent per annum, and to secure the same executed a trust deed to George W.

Smith, dated March 12, 1874, conveying said land, which trust deed was, on or about March 16, 1874, with said notes, placed with said deed, signed and sealed by said company, in the hands of the secretary of said company, to evidence the contract of sale of said land, and await the clearing of the title, so that said company could convey the said land clear from clouds and incumbrances, on which the cash payment of $10,000 was to be made in full, except the sum of $500, which was, on or about said March 16, received by said company from said Roby as an earnest of said purchase.

"Afterwards, and on about March 21, 1874, said tax title not having been removed from said title, and said mortgage thereon being still outstanding, (the same, amounting to $1,-000,000, and embracing the above with other lands,) the said company being desirous to use $10,000 of said purchase money at once, and being desirous that the deferred payments should bear interest from the day of sale at the rate of eight per cent per annum, and the purchaser being desirous to subdivide said land into blocks and lots, with streets and alleys, by extending avenues I, J, K and L from the north southwardly through said land, laying out parts of One Hundred and Sixth and One Hundred and Tenth streets across the north and south ends, and One Hundred and Seventh, One Hundred and Eighth and One Hundred and Ninth streets through said lands from east to west, said One Hundred and Sixth, One Hundred and Seventh, One Hundred and Eighth, One Hundred and Ninth and One Hundred and Tenth streets being parallel and at equal distances apart, which would divide said lands into sixteen blocks of five acres each, and again subdividing said blocks into alleys and lots, making forty-six lots or more to each block of five acres so subdivided, according to the most convenient method of subdivision, and being also desirous to have the indebtedness of $30,000 apportioned on said lots and blocks, a new agreement was entered into and made, namely, two notes of said Harris, of $5000 each, bearing interest, and due in thirty and

sixty days, respectively, from said March 21, 1874, endorsed by said Charles W. Colehour and Edward Roby for the cash payment, should be given to said company, and also the notes of said Harris for the deferred payments of $30,000, such notes to bear date March 12, 1874, as the date of the sale, to bear interest at the rate of eight per centum per annum, payable annually at the office of said company in Chicago, and ten per cent after the maturity thereof, respectively, to be for $10,000 each, and payable, respectively, in one, two and three years from their date, such notes to be secured by a mortgage, without power of sale, to A. S. Downs, the secretary of said company, as trustee, securing $1875 of said principal, with the interest to grow due thereon, on each of said blocks of said land of five acres each, with the provision that any lot or lots of such subdivision should, from time to time, be released from the lien of said mortgage upon payment of $50 of said principal, with interest thereon, for each lot so released, all such securities to be at once delivered, without waiting for the title of said land to be cleared from said $1,000,000 mortgage and said tax title, and said deed of said land to said Harris to be delivered, but to be held in the hands of the financial agent of said company until said two notes of $5000 each should be paid, and then to be recorded. Pursuant to such arrangement said deed to said Harris was put in the hands of the financial agent of said company, and said trust deed to Smith never having been delivered, was handed back by said company, and said three new notes for $10,000 each, bearing interest before maturity, and said mortgage to said Downs, the secretary of said company, and said two notes for $5000 each, were prepared according to said new agreement; and said Harris signed said three notes for $10,000 each, bearing interest before maturity, and said two notes of $5000 each, and the same were duly endorsed by said Colehour and Roby, but said Harris, by mistake, acknowledged said trust deed to said Smith, instead of the deed to Downs, and the said new notes for $10,000 each, and the

said two notes for $5000 each, and said trust deed to said Smith, were put into an envelope, and sent by express, on March 21, 1874, to said agent at New York, as directed by him, and on the next business day thereafter, said mortgage to said Downs and said mistake were discovered, and said mortgage to said Downs was executed and acknowledged by said Harris and delivered to said company, and was accepted and received, and is the only mortgage securing said three notes of $10,000 each, of which copies are annexed to the original bill of said company in this cause. Afterwards said company handed back said three notes of $10,000 each, mentioned and described in said trust deed to said Smith, and surrendered the same up to said Harris to be cancelled, and the same were by him destroyed, and said company promised also to return said trust deed running to said Smith, which has never been done. Afterwards, said two $5000 notes having been paid by said Colehour and Roby, said deed to said Harris was put upon the record, and, by mistake, also said trust deed to said Smith was recorded. And the complainant further says, that Charles W. Colehour and Edward Roby were interested with said Harris in said purchase. And the complainant further says, that by plat made and acknowledged October 16, 1875, said Harris subdivided said land as aforesaid, which plat was recorded in the office of the recorder of deeds of Cook county, on the 26th day of November, 1875, which said plat was accepted and adopted by said company as the plat and subdivision of said land into blocks and lots, according to the provisions of said mortgage to said Downs, held by said company as aforesaid.

"And your orator further shows, that by deed dated November 6, 1875, and recorded in the office of the recorder of deeds of Cook county, on the 26th day of November, 1875, said Harris conveyed said west half of the north-west quarter of said section seventeen (17) unto your orator, and at the same time said Charles W. Colehour assigned and released unto your orator, for a valuable consideration, all his interest in said lands.

"And the complainant further says, that with the consent and approval of said company, your orator caused said streets to be thrown up and improved, and on or about the 16th of November, 1875, your orator held an auction on said land, at which a large number of persons were present, and at such sale James H. Bowen, a director of said company, assisted, and stated to those present, at the opening of the sale, that the said land had been subdivided according to the said plat, of which he held printed copies in his hand, and distributed the same to the purchasers; that his company held a mortgage upon said land so subdivided into lots, to the amount of $50 each lot; that the title of said land was perfect in the complainant, subject only to said mortgage to said company of $50 per lot, and no more, and that the purchasers could pay that sum to A. S. Downs, the secretary of his company, at Chicago, and receive from him, whenever they should pay the money, a release deed of their lots from the company's mortgage, without any expense. And the complainant then and there sold a large number of said lots to divers persons for money paid by them, and gave to them warranty deeds of such lots, in some cases subject to such mortgage of $50 per lot on each lot so sold to them, respectively.

"And the complainant further says, on information and belief, that on or about the 4th day of February, 1876, the said George W. Smith, claiming to act as trustee under the deed of Charles G. Harris, of March 12, 1874, caused a notice to be published in a newspaper that the premises would be sold on the 25th day of March, 1876, which notice was printed daily for forty days consecutively, commencing on the 5th day of February, 1876, and ending on the 25th day of March, 1876, and on said day postponed said sale until the 25th day of April, 1876, and published a notice of the postponed sale for twenty-five times successively, from the 27th day of March, 1876, and that such notice was the only notice given of such intended sale, and on the said 25th day of April, 1876, the

said George W. Smith offered the said eighty acres of land, *en masse,* for sale, and struck off the same to the Calumet and Chicago Canal and Dock Company for the nominal sum of $30,000, and thereupon executed a deed to said company, and the complainant says that said sale is invalid for the want of the publication of a notice according to the terms of said deed of trust so made by Harris, which required a notice of ten days, thirty days before the day of sale.

"And the complainant further says, that on or about September 1, 1875, the said company having before that time assigned the said notes described in the original bill herein, to David R. Green, as a security for money borrowed, executed and delivered a deed of trust to said George W. Smith, Joseph H. Brown and William Bayard Cutting, as trustees, conveying and assigning different securities for purposes set forth in said deed and assignment, and among them included the said three notes and deed of trust securing the same, and subsequently thereto the said Green accepted the provisions of said deed of trust, retaining, however, the full ownership and control of said notes and trust deed on the same pledge originally made, and the said notes and deed of trust were by said Green delivered to the said George W. Smith, who was the active trustee, under said deed to Smith, Brown and Cutting to hold for the use and benefit of him, the said Green. And the complainant says, that at the time the said George W. Smith advertised the said eighty acres of land for sale under the deed of trust made by Harris, and at the time of the pretended sale thereunder, and the pretended deed made to the Calumet and Chicago Canal and Dock Company, the said notes executed by Harris, as aforesaid, were owned and held by the said George W. Smith, one of the trustees under the said deed of September 1, 1875, and because of these facts, the said George W. Smith was disabled from executing the provisions of said trust deed from Charles G. Harris, and could make no valid sale by virtue of the power therein contained. And the complainant

further says; that the said George W. Smith, as trustee under the Harris trust deed, struck off and sold the said eighty acres of land to the Calumet and Chicago Canal and Dock Company, and executed and delivered a deed to it without receiving any money whatever at said sale, and that such sale was not *bona fide*, and a due execution of the power contained in said deed, and said land, after the making of the deed by the said George W. Smith, as trustee, remained a part of the trust created by the deed of September 1, 1875, until the 31st of July, 1882, when a pretended closing of said trust was made.

"And the complainant further says, that at the time of said sale the Calumet and Chicago Canal and Dock Company was not the legal holder of said notes, and that the application of said company, as recited in said trustee's deed, did not justify an exercise of the power of sale in the trust deed.

"And complainant further says, that said sale and deed were invalid, because the notice did not state the amount due upon said notes described in the trust deed.

"And the complainant further says, that at the time of said pretended sale, on the 25th day of April, 1876, said eighty acres of land had been subdivided into blocks and lots, and numerous sales had been made of separate lots, and conveyance thereof by this complainant, as the grantee of said Harris, and warranty deeds executed therefor, under the representation made by the said James H. Bowen, for and in behalf of said company, that each of said lots might be redeemed from said mortgage by the payment of $50, and that many of said lots were occupied by such purchasers for actual residence at the time of said sale, yet the whole eighty acres were offered as one tract, regardless of said separate interests, and for this reason the said sale was invalid.

"And the complainant further says, that actual possession was taken of said eighty acres by the said Charles G. Harris under a deed to him from said company, and transferred by him to this complainant at the time of the conveyance so made

to him, and such actual possession continued by this complainant and purchasers of separate lots down to the present time, and that the said company has never been in the actual possession of said premises, or any part thereof.

"And the complainant further says, that both before and since the pretended foreclosure by the sale April 25, 1876, the said company has received large sums of money as payments on the incumbrance created by the said Harris for the purchase money, and releases or quitclaim deeds have been executed for a large number of said lots on the receipt of said money; that many of said payments were made during the year 1883, under an arrangement made with the secretary and treasurer of said company, and that the said company has treated with this complainant and purchasers of lots as if the said sale did not foreclose the equity of redemption, and that the mortgage was still subsisting thereon until about the 1st of January, 1884, when the said company set up a claim of title to said land in fee, through said invalid sale made by the said George W. Smith on the 25th of April, 1876.

"And the complainant further says, that on or about July 5, 1883, he conveyed to Charles W. Colehour, by warranty deed, the following lots in said subdivision, subject to the payment of the lien of said mortgage thereon, to wit: Lots 3 to 9, inclusive, in block 47; lots 35, 36 and 37 in block 48; lots 5 to 28, inclusive, in block 49; lots 25 to 31 in block 50; lots 44 to 48, inclusive, in block 51; lots 1, 2 and 13 in block 51; lots 1, 2, 3, 4, 25 to 35, inclusive, 45 to 48 in block 52; lot 5 in block 53; lots 45 to 48, inclusive, in block 56; lots 1 to 4, inclusive, 10 to 35, inclusive, in block 57, in Ironworkers' addition to South Chicago, aforesaid, and on or about the 18th day of July, 1883, a contract was made between this complainant and said Charles W. Colehour, by which the complainant was to convey to the said Charles W. Colehour all of his interest in said tract of land.

"And the complainant further says, that on or about the 22d day of August, 1876, the Calumet and Chicago Canal and Dock Company executed to Joseph H. Brown and others a release from said mortgage, or a quitclaim deed of the south twenty acres of said eighty acre tract, and the same was soon thereafter recorded in the recorder's office of Cook county, intending thereby to discharge the said twenty acres from the incumbrance created by the said Harris."

The prayer is, that a decree may be entered setting aside the sale and deed made by the said George W. Smith, as trustee, to the Calumet and Chicago Canal and Dock Company, and that the nature and terms of the incumbrance created by the said Charles G. Harris upon the west half of the northwest quarter of section 17, in township 37, north of range 15, east of the third principal meridian, may be established and determined, and that it may be declared that said incumbrance is to secure $1875 for each block of said subdivision thereof, and that each lot shall be discharged upon payment of $50 of principal, and the interest thereon, and that an account may be stated of the amount paid on said mortgage, and the balance be fixed, and for general relief. The Calumet and Chicago Canal and Dock Company, Charles W. Colehour, Edward Roby and Jacob Bremer are made defendants, and required to answer, but without oath.

Edward Roby answered, admitting, in substance, the allegations to be true. The Calumet and Chicago Canal and Dock Company answered, admitting the allegations in respect to the pleadings, and the sale and conveyance to Harris. It neither admitted nor denied that it contracted with Roby to sell and convey to Harris. It admitted the stipulated price to be paid for the land, to be as alleged,—$40,000,—of which $10,000 was to be paid in cash at the time of the conveyance. It also admits that the residue of the purchase money was to be evidenced by the notes of Harris, of $10,000 each, and payable,

respectively, in one, two and three years from the date of sale, but denies that said notes were to be without interest before maturity, and avers that they were to be with eight per cent interest from date, and ten per cent interest after due, until paid. The answer then specifically denies all the material allegations of the cross-bill.

On hearing, the court decreed as follows :

"This cause having come on ·for hearing at the January term, A. D. 1885, of this court, before the Hon. George Gardner, one of the judges of the said court, in chancery sitting, upon the original and cross-bills and amended cross-bills, as above, and the answers thereto, and replications to the answers, and upon the oral and documentary evidence offered by the respective parties, and the court having heard all of the evidence and the arguments of counsel, and had the same cause under advisement, and now, at this December term, A. D. 1885, of said court, the court being fully advised in the premises, doth find, from the evidence, that at the time alleged in the original bill, on, to-wit, the 10th day of March, A. D. 1874, the Calumet and Chicago Canal and Dock Company, the complainant in the original bill herein, was the owner in fee of the premises described in said original bill, to-wit, the west half of the north-west quarter of section seventeen (17), in township thirty-seven (37) north, range fifteen (15), east of the third principal meridian, in Cook county, Illinois, and in the spring of the year A. D. 1874, by its deed bearing date on the said day, sold and conveyed said premises, by warranty deed, to Charles G. Harris, for the consideration of forty thousand dollars ($40,000), as expressed in said deed, and which deed was recorded in the recorder's office of Cook county, Illinois, on May 28, A. D. 1874, in book 381, on page 442, as document 170,748, as alleged in said original bill, and that $10,000 of said purchase money was paid by said Edward Roby; and that said Charles G. Harris, the grantee of said Calumet and ·Chicago Canal and Dock Company, to evidence

and secure the unpaid purchase money, amounting to thirty thousand dollars ($30,000), executed and delivered to the said dock company his three promissory notes, of $10,000 each, dated March 12, 1874, and becoming due, respectively, March 12, 1875, March 12, 1876, and March 12, 1877; and also executed and delivered to the said dock company a deed of trust, conveying said property to George W. Smith, as trustee, with power to sell and convey said property in case of default in the payment of the promissory notes given for the unpaid purchase money for said land, which said deed of trust was recorded in the office of the recorder of deeds of said county of Cook, as alleged and set forth in said original bill of complaint, and a copy of which said deed of trust is attached to said original bill, and the original of which said promissory notes and deed of trust are in evidence herein; and that two sets of notes were made for the purpose of evidencing said deferred payments, and were disposed of, as shown by the evidence, the three notes read in evidence herein remaining in possession of the said Calumet and Chicago Canal and Dock Company; and that the legal title to said premises so conveyed to said Harris as aforesaid, was held by him, the said Harris, in trust, as between themselves and the said Harris, for the said Edward Roby and Charles W. Colehour, as equal tenants in common, and that said William H. Colehour took the title to said premises, as hereinafter stated, upon the same trusts as to said Roby; and such title or right as is now in said William H. and Charles W. Colehour, is subject to the same trust, as to said Roby, as to one undivided half thereof; that the said Edward Roby has not conveyed his said interest in said premises, but retains such interest, except as affected by the said deed of trust to said George W. Smith, and the sale by said Smith thereunder, and the conveyance of said premises by said Smith to the said Calumet and Chicago Canal and Dock Company.

"And the court doth further find, from the evidence, that the said Jacob Bremer and Charles W. Colehour, and William

H. Colehour and Edward Roby, and all parties claiming any interest in said premises, or any part thereof, from, through, by or under the said Jacob Bremer, Charles W. Colehour, William H. Colehour and Edward Roby, or either of them, are by lapse of time, and by their admissions, declarations and conduct, equitably and forever barred and estopped from asserting or claiming that the said promissory notes of the said Charles G. Harris, mentioned in said original bill, are not the notes intended to be described in and secured by said deed of trust by said Charles G. Harris to said George W. Smith, described in said bill, and in evidence as aforesaid, and from asserting or claiming that said deed of trust by Charles G. Harris to said George W. Smith was not made, executed and delivered to secure said three promissory notes, as alleged in said original bill.

"And the court further finds, from the evidence, that said Charles G. Harris, as alleged in said bill, subdivided a portion of the said described property as 'Ironworkers' addition, being a subdivision of the west half of the northwest quarter of section seventeen (17), township thirty-seven (37) north, range fifteen (15), east of the 3d P. M.,' and which subdivision was duly recorded in the office of the recorder of deeds of said county of Cook on the 26th day of November, A. D. 1875, as document 60,101, and that the said Charles G. Harris, on the 6th day of November, A. D. 1875, conveyed said premises as the west half of the north-west quarter of section seventeen (17), township thirty-seven (37) north, range fifteen (15) east, to the said William H. Colehour, as alleged in said original bill, and that after the making and acknowledging of said subdivision, as aforesaid, and after the conveyance of said property by said Charles G. Harris to said William H. Colehour, the said William H. Colehour, by his deed of November 16, 1875, sold and conveyed to said Jacob Bremer lots one (1) and two (2), in block forty-seven (47), of said subdivision, as alleged in said original bill, and that said property, when so subdivided

by said Harris, and when so conveyed by said Harris to said
William H. Colehour, and by said William H. Colehour to said
Jacob Bremer, was subject to the lien of the said Calumet and
Chicago Canal and Dock Company, complainant in said orig-
inal bill, for the said unpaid purchase money, and interest
thereon.

"And the court further, finds from the evidence, that the
said promissory note of the said Charles G. Harris, falling due
March 12, 1875, and the interest upon the other of the said
promissory notes becoming due and remaining unpaid, the
said Calumet and Chicago Canal and Dock Company, being
the owner of the notes, in pursuance of the right given by said
deed of trust, declared the whole amount of said notes, (prin-
cipal and interest,) to be due, and requested the said George
W. Smith, the trustee named in said deed of trust, to proceed
thereunder to sell said mortgaged premises, and that said
George W. Smith did, in accordance with said request, assume
to proceed, under the power in said deed of trust contained, to
advertise and sell said premises, and did, on the 25th day of
April, A. D. 1876, offer for sale, at public auction, to the
highest bidder, for cash, the said premises, and at said sale
the said Calumet and Chicago Canal and Dock Company be-
came the purchaser, and received the trustee's deed for said
premises, as in said original bill alleged, which said trustee's
deed was, on the 17th day of May, 1876, duly recorded in the
recorder's office of Cook county, as in said bill alleged.

"And the court further finds, from the evidence, that the said
Calumet and Chicago Canal and Dock Company has, since the
10th day of March, A. D. 1874, paid sundry taxes assessed
upon said property, including taxes assessed upon said lots
one (1) and two (2), in said block forty-seven (47), of said Iron-
workers' addition, but that the amount of taxes so paid by the
said Calumet and Chicago Canal and Dock Company is not
computed or ascertained from the evidence.

"And the court further finds, from the evidence, that the said lots one (1) and two (2), in block forty-seven (47), in said Ironworkers' addition, were, at the time of the filing of the original bill herein, vacant and unoccupied, as alleged in said bill.

"And the court further finds, that after the making of the said sale, under the said deed of trust, by said George W. Smith, as trustee, and after the execution and delivery of said deed by the said George W. Smith, as trustee, to the said Calumet and Chicago Canal and Dock Company, said company did adopt the said plat and subdivision of the said Ironworkers' addition, as alleged in said original bill.

"And the court further finds, from the evidence, that in consequence of irregularities and defects in the notice and proceedings by the said George W. Smith, trustee as aforesaid, in making the sale under the said deed of trust from the said Charles G. Harris to said Smith, as trustee, by virtue of the power of sale therein contained, that the said Jacob Bremer, Charles W. Colehour and William H. Colehour and Edward Roby, or any or either of them, is entitled to have said sale of said property described in said deed of trust set aside, upon such terms and within such time as may be prescribed by the court, upon paying to the Calumet and Chicago Canal and Dock Company the amount now due upon said promissory notes, including the interest thereon, as specified in said deed of trust, and upon paying to the said Calumet and Chicago Canal and Dock Company the amount paid by the said dock company for taxes upon said land, and interest thereon, as provided in the said deed of trust.

"The court doth therefore order, adjudge and decree, upon the evidence, that if the said Jacob Bremer, William H. Colehour and Charles W. Colehour and Edward Roby, or any of them, pay to the said Calumet and Chicago Canal and Dock Company the sum due on the said promissory notes, of principal and interest, according to the tenor thereof, computed to the time of such payment, and also all taxes and assess-

ments paid, or advances made, by said Calumet and Chicago Canal and Dock Company, with interest thereon at the rate of ten per cent per annum from the time of such payment, and pay the same within ninety days from the ascertainment of the amount due for such principal and interest, and for taxes paid, and for interest thereon, that then and thereupon the sale made by the said George W. Smith under such deed of trust be cancelled and set aside and for naught held, and the deed made by the said George W. Smith, as trustee, to the Calumet and Chicago Canal and Dock Company be also cancelled and for naught held, and the said deed of trust be satisfied and cancelled, and that in default of such payment of the amount of principal and interest due upon said notes, and the taxes and assessments, and interest thereon, as aforesaid, the said sale by the said George W. Smith be and is in all respects confirmed, and the said Jacob Bremer, William H. Colehour, Charles W. Colehour and Edward Roby, and each of them, and all parties claiming any interest in said premises, or any part thereof, by, through or under them or either of them, be forever barred and foreclosed of any and all right in said premises or equity of redemption therein; and the said premises described in said deed of trust, to-wit, the west half of the north-west quarter of section seventeen (17), township thirty-seven (37) north, range fifteen (15), east of the third principal meridian, in the county of Cook, aforesaid, and said Ironworkers' subdivision, or a part thereof, shall thenceforth be vested in said Calumet and Chicago Canal and Dock Company, its successors and assigns, in fee simple, free and clear of all right and claim, by way of equity of redemption or otherwise, of the said Jacob Bremer, William H. Colehour and Charles W. Colehour and Edward Roby, or either of them, or of any person or persons claiming by, through or under them or either of them, and that they be estopped from setting up any claim, right, title or equity of redemption in said land; and the said Jacob Bremer shall, upon such failure so to pay

as aforesaid, make, execute and deliver to the said Calumet and Chicago Canal and Dock Company his deed conveying to said dock company the said lots one (1) and two (2), in block forty-seven (47), in said Ironworkers' addition; and upon the failure of the said Jacob Bremer, for the period of ten days after the expiration of the time of payment herein limited, so to do, Edward J. Whitehead, master in chancery of this court, is directed to make such deed of said lots, which shall convey to said dock company all the right, title and interest of said Jacob Bremer in and to said lots, derived through or under the said deed of said William H. Colehour to him, or through or under the deed of the said Calumet and Chicago Canal and Dock Company to the said Charles G. Harris; and inasmuch as the amount due on said promissory notes, for principal and interest, to the Calumet and Chicago Canal and Dock Company, and the amount due said dock company for taxes and assessments paid and advanced by said company as aforesaid, has not been ascertained, this cause is referred to Edward J. Whitehead, master in chancery, to take proofs, and compute the amount thereof, and return the same to this court for its action thereon, within sixty days from the filing of this decree; and the said dock company, complainant in said original bill, is directed to introduce before said master its proofs of the amount due upon said promissory notes, of principal and interest aforesaid, and the amount due for taxes and assessments, and the interest thereon, as aforesaid, within twenty-five days from the entering of this decree, giving to the said Jacob Bremer, William H. Colehour and Charles W. Colehour and Edward Roby, or their solicitors herein, five days' notice thereof, and the said Jacob Bremer, William H. Colehour and Charles W. Colehour and Edward Roby, within twenty-five days after lapse of said time and the closing of the said complainant's proofs, and upon five days' notice thereof, said cross-complainants may introduce their proofs as to the amount so due as aforesaid, and the said complainant may, within ten days

after the closing of the proofs of the said Jacob Bremer, Charles W. Colehour and William H. Colehour and Edward Roby, introduce their proofs in rebuttal, upon the like notice, and this cause is continued for such report and the further action of the court in the premises. It is further ordered, that either party may have sixty days to prepare and file a certificate of evidence after the entry of this decree."

Subsequently the master reported the amount due as follows:

For principal and interest on said promissory
   notes -        -        -        -        -        -        -        - $65,450.01
For taxes and assessments paid and advanced by
   said complainant, and interest thereon -        -        9,244.02
     Making in all -        -        -        -        -        - $74,694.03

But upon agreement of counsel that the amount of principal and interest due upon the notes should be reduced by amount of $500, paid by Edward Roby on the 12th day of March, 1874, and interest thereon from said date, amounting to $1100.83, thus leaving the total sum due the complainant $73,873.20, the master's report was reduced to this sum, and was then confirmed by the court; and then further decreed, "that unless the persons entitled to redeem said premises shall pay to the said Calumet and Chicago Canal and Dock Company the said sum of money last above mentioned, with the interest thereon, within ninety days from this date, according to the tenor and effect of the decree entered in this cause at the December term, A. D. 1885, of this court, then and thenceforth, from and after the expiration of said period of ninety days, the said persons, and each of them, shall be absolutely and forever barred of and from all right and equity of redemption of, in and to, all and singular, the premises in said decree mentioned and described. It is further ordered, that each party to this suit pay his own costs."

The record is before us on error, upon the decree thus rendered. The errors assigned sufficiently present all the questions discussed in the opinion.

Mr. EDWARD ROBY, for the plaintiffs in error:

The notes under which the foreclosure sale was made, were not those described in the trust deed. As to the identity and variance, see 1 Starkie on Evidence, 433; 1 Greenleaf on Evidence, sec. 69; *Taylor* v. *Kennedy,* Breese, 91; *Insurance Co.* v. *Lieberman,* 58 Ill. 117; *Streeter* v. *Streeter,* 43 id. 157; *Moore* v. *Titman,* 35 id. 310; *Spangler* v. *Pugh,* 21 id. 85; *Boynton* v. *Robb,* 41 id. 349; *Thompson* v. *Hoagland,* 65 id. 312; *Gregg* v. *Frye,* 32 Me. 283; *Sawyer* v. *Patterson,* 11 Ala. 523; *Coyle* v. *Gozzeler,* 2 Cranch C. C. 625; *Blue* v. *Russell,* 3 id. 102.

The power of a special agent to do an act must be shown. Story on Agency, 126; *Tucker* v. *Gill,* 61 Ill. 236.

The second set of notes were very different from the set which were to be secured by the Smith deed of trust. *Moore* v. *Titman,* 35 Ill. 310; *Tiernan* v. *Granger,* 65 id. 354.

The result is, that the trust deed could confer no power of sale on Smith. *Walker* v. *Carleton,* 97 Ill. 582; *Chase* v. *Dana,* 44 id. 262; *Tucker* v. *Gill,* 61 id. 236.

Like a will, the statute prescribes the things necessary to execute the intention of the maker, and an intention can not be effectuated if not expressed in the writing. *Kurtz* v. *Hibner,* 55 Ill. 514; *Heslop* v. *Gatton,* 71 id. 528; *Starkweather* v. *American Bible Society,* 72 id. 50.

Strict powers are such as are to be executed only under the exact circumstances prescribed in the instrument of trust. Perry on Trusts, sec. 490.

The trustee's sale is void for want of the proper notice being given. If the trustee adjourns the sale, he must give notice of the new day fixed for the same time he was first required to give. *Thornton* v. *Boyden,* 31 Ill. 210; *Campbell* v. *McCahan,* 41 id. 49; *Hall* v. *Towne,* 45 id. 495; *Griffin* v. *Marine Co.* 52 id. 141.

Mr. JOHN B. COHRS, for the defendant in error:

The objection as to the variance in the dates of the notes was clerical. The objection that the notes read in evidence

were not the notes described in the trust deed, was a question of fact, and was not made below. *Beaver* v. *Slanker,* 94 Ill. 175 ; *Lyman* v. *Gedney,* 114 id. 388.

The parties, by their conduct and acts, are estopped, so far as their interest in the property is concerned, from asserting that there was any other mortgage from Harris.

The deed made by the trustee, even if made without notice, conveyed to his grantee the legal title to the premises, and the grantee will hold it until redemption is had, which could only be in a court of equity. *Reece* v. *Allen,* 5 Gilm. 236 ; *Gillespie* v. *Smith,* 29 Ill. 473 ; *Graham* v. *Anderson,* 42 id. 514 ; *Wilson* v. *South Park Comrs.* 70 id. 46.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Very much of the argument on behalf of plaintiffs in error will be seen to be inapplicable to the present record, when the effect of the decree below shall be understood. The bill of the Calumet and Chicago Canal and Dock Company seeks a decree setting aside the deed of William H. Colehour conveying to Jacob Bremer lots 1 and 2, in block 47, in Ironworkers' addition, being a subdivision of the west half of the north-west quarter of section 17, town 37 north, range 15, east of the third principal meridian, in Cook county, and it is neither framed upon the hypothesis that Bremer's title is that of a mortgagee, nor does it seek the foreclosure of any mortgage. Had no cross-bill been filed, manifestly the decree must have been either that the relief prayed be granted, or that the bill be dismissed. There was no affirmative relief granted in conformity with the prayer of the bill, and while there was no final decree that the bill be dismissed, the practical effect of .the decree was equivalent to that.

The cross-bills are, in effect, bills to redeem. They ask that the title under the trustee's sale be·held to be that of mortgagee, only, and that they be let in to redeem. It is true, the

court, in its final decree, did not find the right to redeem precisely as they alleged it to be; but, under the prayer for general relief, it was clearly competent to grant these parties the right to redeem that was granted by the decree.     The decree distinctly recites : "And the court further finds, from the evidence, that in consequence of irregularities and defects in the notice and proceedings by the said George W. Smith, trustee as aforesaid, in making the sale under said deed of trust from the said Charles G. Harris to said Smith, as trustee, by virtue of the power of sale therein contained, that the said Jacob Bremer, Charles W. Colehour, William H. Colehour and Edward Roby, or any or either of them, is entitled to have said sale of said property described in said deed of trust set aside, upon such terms and within such time as may be prescribed by the court, upon paying to the Calumet and Chicago Canal and Dock Company the amount now due upon said promissory notes, including the interest thereon, as specified in said deed of trust, and upon paying to the said Calumet and Chicago Canal and Dock Company the amount paid by the said dock company for taxes upon said land, and interest thereon, as provided in the said deed of trust."

We are not inclined to interfere with the findings of fact in the decree.     The court finds, "from the evidence, that the said Jacob Bremer, Charles W. Colehour, William H. Colehour and Edward Roby, and all parties claiming any interest in said premises, or any part thereof, from, through, by or under the said Jacob Bremer, Charles W. Colehour, William H. Colehour and Edward Roby, or either of them, are, by lapse of time, and by their admissions, declarations and conduct, equitably and forever barred and estopped from asserting or claiming that the said promissory notes of the said Charles G. Harris, mentioned in said original bill, are not the notes intended to be described in and secured by said deed of trust by said Charles G. Harris to said George W. Smith, described in said bill, and in evidence as aforesaid, and from asserting or claiming that

said deed of trust by said Charles G. Harris to said George W. Smith, was not made, executed and delivered to secure said three promissory notes in said original bill." It is true, there is upon this point an irreconcilable conflict in the evidence; but we are unable, after having carefully considered all the evidence bearing upon the point, to say that we are clearly satisfied that the court below erred in its finding.

There is also a conflict in the evidence upon the point, whether an officer of the dock company, having authority to conclude it by his declarations and actions, represented and agreed that each lot might be redeemed by the payment of $50, and thereby induced Bremer and others to purchase; but we, in this respect, as in the other, can not say that we are clearly satisfied that the court below erred in its finding. The decree, however, directing Bremer to convey, and on his default the master in chancery to do so, and in assuming to give affirmative relief to the Calumet and Chicago Canal and Dock Company in any other respect, is unauthorized. The decree, after directing the payment of the amount required to be paid to redeem, should then have concluded, that in default of the complainants so doing the cross-bills be dismissed. 2 Daniell's Ch. Pr. (Perkins' ed.) 1016, 17; Seton's Decrees in Equity, 106, *145; *Walker* v. *Harris*, 7 Paige Ch. 167; 2 Barbour's Ch. Pr. (2d ed.) 200; 2 Jones on Mortgages, (2d ed.) 1106.

An objection is urged, that the decree should have provided for the statutory period of redemption. This is not tenable. The time rests in the sound discretion of the court, in view of all the circumstances. In such cases, the complainant should be prepared to pay at once, and his bill, when properly framed, in fact offers to make payment. The usual time allowed is six months, but that is not obligatory in all cases. 2 Jones on Mortgages, (2d ed.) sec. 1107. We can not say that the court here abused its discretion in that respect.

The decree is in all respects affirmed, except in so far as it assumes to give affirmative relief, but in that respect it is

reversed, and the cause remanded to the court below, with directions to that court to modify and amend the decree to conform to the views herein expressed. Each party will be taxed with the costs made by that party in this court.

*Decree reversed in part and in part affirmed.*