**Ernest C. Ladd et al., Plaintiffs in Error, v. John H. Ladd, Defendant in Error.**

### Gen. No. 5,632.

1. ACCOUNT—*review.* A decree of accounting in conformity to a master's report will be sustained, where the brief of the complainants does not point out any errors, nor discuss the details of the accounting.

2. MORTGAGES—*redemption.* Where mortgagors file a bill asking the court to ascertain the total amount expended on the premises by the mortgagee, and to fix a single time for payment, declaring that they were ready to pay, they cannot thereafter object to a decree requiring the total amount to be paid at one time, though the finding of the master showed that the agreement between the mortgagors and mortgagee was to repay the amount in monthly instalments, particularly where it further appears that the mortgagee had been obliged to expend three or four times more than the agreement called for.

3. MORTGAGES—*redemption*. Where complainants file a bill to have defendant declared mortgagee of premises to which he holds a deed, and ask for an accounting and reconveyance, and no cross-bill is filed by defendant, the court on finding the sum required to redeem should not fix a time for payment and order a sale on default, but should provide that in case payment is not made, defendant should be entitled to a further decree barring complainants of all equity of redemption, and dismissing the bill.

Bill in equity. Error to the Circuit Court of Henry county; the Hon. FRANK D. RAMSAY, Judge, presiding. Heard in this court at the April term, 1912. Affirmed in part, reversed in part and remanded with directions. Opinion filed October 15, 1912.

STURTZ & EWAN and JOHN T. CUMMINGS, for plaintiffs in error.

ANDERSON & ANDREWS, for defendant in error.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Ernest C. Ladd and Grace L. Ladd, brother and sister, filed an amended bill in equity, hereinafter called the bill, against John H. Ladd, their uncle. They alleged that Ernest had a contract for a deed of one, and Grace L. Ladd of another, of two adjoining lots, upon which they had made payments; that they bought them for the purpose of building thereon a dwelling house for their home; that they made a verbal arrangement with John H. Ladd by which he was to pay the rest of the consideration agreed to be paid for said lots and should pay such part as they could not pay of the cost of a dwelling house to be built thereon, and that they should repay him at the rate of $50 per month without interest, and that they should cause the title to be conveyed to him as security for such repayment; that he paid the residue due to the holders of the title and complainants caused the title to be conveyed to him, pursuant to said verbal agreement; and that they erected a house thereon and took possession thereof, and that he paid a part of the bills for the same and has refused to account to them for

the amount which he expended; and they asked that he be compelled to account and that the amount due him be ascertained; and they offered to pay the same. The bill further stated that defendant had brought an ejectment suit against complainants for these premises, and it sought an injunction to restrain the prosecution of that suit, and such injunction was granted. John H. Ladd answered, admitting that he had made such payments and that the title had been conveyed to him, but denying that it was conveyed as security; and alleging that he owned the fee and had agreed to sell the same to them upon their paying him all that he had expended, in instalments of $75.00 per month, with lawful interest. The cause was referred to a master, who took the proofs and stated the account between the parties. Much immaterial testimony was taken, for complainants introduced proof to show how much money they had put into the property and payments which passed through the hands of their father, Charles K. Ladd, now deceased, which was wholly unnecessary, as the only material question, after finding the contract, was to determine how much John H. Ladd had advanced. The master found and reported that complainants were to repay defendant all moneys advanced by him at the rate of $75 per month, with lawful interest, and that the deed to him of said lots was a mortgage to secure that indebtedness. The master did not report the amount so advanced by defendant in one single sum, but, combining his report, its effect seems to have been to determine that there was due from complainants to defendant, including interest to June 10, 1910, the total sum of $12,137.69. Objections were filed to said report by complainants and the same were overruled, and they stood as exceptions thereto before the court and they were overruled, and on November 22, 1910, there was a decree finding due from complainants to defendant $12,410.08. How that exact result was reached does not readily appear from the report, but, although the brief of complainants

here states that the amount is too high, it does not point out any error nor discuss the details of the accounting, and we therefore treat the amount of the decree as correct. The decree ordered that complainants pay said sum to defendant within 90 days with interest at 5% thereon from the date of the decree, and that, in default of such payment, the master sell the premises as is usual in case of foreclosure of mortgages. The court continued the injunction in force for 90 days. Complainants and defendant (of whose entire claim $1,392.60 had been rejected by the master) each obtained orders for an appeal from said decree, which appeals were not perfected. After the expiration of the 90 days the master sold said premises to defendant for $10,500, and the report of said sale was approved by the court on March 22, 1911 (though the abstract does not so show), and defendant then moved the court for a deficiency decree. On March 31st, the defendant obtained leave to file an amended answer to conform to the proofs, and filed an amended answer, in which he asserted that the deed in question was a mortgage and that complainants were indebted to him, and asked that if a balance should be found due, the court fix a day for the payment of the balance; that in default of such payment by such time, the premises described in the bill be sold to satisfy the amount found due; that, if said premises should not sell for enough to pay the amount found due, he might have a deficiency decree against the complainants. Thereupon on March 31, 1911, the court again approved the sale and rendered a deficiency decree for defendant against complainants for $2,337.90, with execution therefor. This is a writ of error sued out by complainants to review those proceedings.

Complainants contend that as the master found that this debt was to be paid at the rate of $75 per month, with interest at the legal rate, and as there was no contract that the whole sum should become due upon failure to pay any instalment, it follows that it was

error for the court to require its payment within 90 days. We are of opinion that complainants have waived the right to pay this debt in monthly instalments. The bill asked an accounting of the moneys expended by defendant upon the unpaid purchase price of said lots and upon the construction of said house, and stated that complainants were ready and willing and offered to pay defendant what should appear to be due him. The bill prayed that upon the ascertainment of the amount so expended by defendant "a time may be fixed for the payment of such sum so ascertained in accordance with said verbal agreement and that upon the payment of said sum by the complainants to the defendant at that time, the defendant may be decreed by the decree of this court to convey said premises to the complainants." This was not a prayer that they be permitted to redeem by paying $50 per month or $75 per month for many years to come and that thereafter a deed be made to them. This bill asked the court to ascertain the total amount which defendant had expended upon these lots and to fix a single time when complainants should pay it, and they offered and declared themselves ready to pay it at such time as the court should fix, and they asked for a reconveyance then. This is inconsistent with their present claim that they should be given a long series of years in which to pay. Moreover, their offer in the bill to pay at once was one to which defendant was equitably entitled, for, when he agreed to accept monthly payments, it is clear that it was intended that the cost of the house should not exceed $3,500, and the subsequent large increase in its cost was occasioned by complainants and not by defendant.

This was a simple bill to redeem, without any special circumstances calling for the application of any unusual rule of law. The main question is, what is the proper provision in a decree granting redemption on a bill to redeem, if complainant fails to pay within the reasonable time fixed by the court? Harper v. Ely,

70 Ill. 581, was held to be a bill to redeem, and the court affirmed a decree that in default of payment the bill be dismissed. Decker v. Patton, 120 Ill. 464, holds that the proper decree in such case is that in default of payment within the time fixed by the court, defendant will be entitled, as of course, to a further and final order dismissing the bill. In Bremer v. C. & C. Canal & Dock Co., 127 Ill. 464, it was held (on page 491) that the cross-bills on which the decree was based were in effect bills to redeem, and that the decree should have provided that in default of payment within the time fixed the cross-bills be dismissed; and it was there held that under a bill to redeem, the complainant must be prepared to pay at once and is not entitled to the statutory period of redemption. In De Walsh v. Braman, 160 Ill. 415, the court directed a decree that defendants convey to complainant on complainants paying defendants the sum found due within a reasonable time to be fixed in the decree, and that if such payment be not made, the bill be dismissed and complainant be barred from asserting any further relief in the subject-matter of the controversy. In O'Connell v. O'Conor, 191 Ill. 215, it was held that the bill should be dismissed, if payment was not made within the time limited. In Carpenter v. Plagge, 93 Ill. App. 445, we held that the ordinary decree allowing a redemption was that, if payment was not made within the reasonable time fixed by the court, the complainants should be barred from thereafter seeking any further relief concerning the subject-matter of the controversy; and in the same case on appeal in 192 Ill. 82, it was said that the ordinary decree was that, in default of payment within the time specified, the bill be dismissed; but, as the creditor had there filed a cross-bill to foreclose, it was held there should have been a decree for the sale of the premises if payment was not made. In Henderson v. Kibbie, 211 Ill. 556, it was held that the decree allowing redemption should provide that if payment be not made the bill be dis-

missed.  This rule has the sanction of other courts.
In Sherwood v. Hooper, 1 Barb, Ch. 650, it was held
that, if complainant in a bill to redeem failed to pay
within the time fixed, he should be barred of all claim
and equity of redemption in the premises.  In Quin v.
Brittain, Hoffman's Ch. 353, it was held that that case
should be treated as a bill to redeem, and that, if the
amount found due was not paid, there should be a decree
of dismissal, and that that would be equivalent to a
foreclosure.  In Perine v. Dunn, 4 Johns, Ch. 140,
where many cases are cited, it was held that the usual
decree on a bill to redeem is that, if complainant fail
to pay, the bill be dismissed, and that such a dismissal
bars the equity of redemption because it can be pleaded
in bar of a new bill to redeem.  In Stevens v. Miner,
110 Mass. 57, it was held that the English form of a
decree in a suit to redeem is that the bill be dismissed
unless the plaintiff pay a certain sum within a certain
time, and if payment be not made, and if the provi-
sion that the bill be dismissed has been omitted, a final
order dismissing the bill will be granted as of course;
that when a mortgagor obtains a decree of redemp-
tion, his right is thereby defined and no other or differ-
ent right remains to him; and that upon his failure to
comply with the terms of the decree for redemption,
a decree follows which terminates the suit and cuts
off the right to redeem.  This decision is partly based
on a statute, but is in harmony with the rule otherwise
announced.  These views are sustained in 2 Jones on
Mortgages, sections 1106, 1107, 1108, where it is also
said that it is irregular to decree a sale of the lands
when the bill to redeem contains no prayer for a sale
and the mortgagee has not filed a cross-bill.  There
are some cases which deviate from the rule above
stated, but in each there will be found some special
conditions which take the case out of the ordinary
rule.  Among such cases are Hollingsworth v. Koon,
117 Ill. 514, which was specially distinguished in

Decker v. Patton, *supra,* as not a bill to redeem, and Carpenter v. Plagge, *supra,* where the creditor filed a cross-bill to foreclose. In the case at bar defendant did not file a cross-bill. The court therefore erred in directing a sale in case of nonpayment, and erred in the subsequent proceedings. There are other reasons why the court should not have permitted defendant, at a later term and after the sale had been made and approved, to file another sworn answer, contradicting his first sworn answer, and should not have granted defendant a deficiency decree. These matters do not need to be discussed, as they necessarily fall with the reversal of the decree for the sale of the property.

After the expiration of the 90 days, during which the injunction against the ejectment suit was continued in force, John H. Ladd proceeded with that suit and had a judgment against Ernest C. and Grace L. Ladd for the recovery of the premises, which was affirmed in Ladd v. Ladd, 252 Ill. 43.

So far as the decree approves the master's report upon the accounting, it is affirmed. In all other respects the original decree is reversed and the decree approving the sale and the deficiency decree are each reversed, and the cause is remanded with directions to the court below to ascertain the interest on the amounts found by the master in his report upon the accounting from the date to which he computed the interest, and add that to the sums found by the master, and to enter a decree permitting complainants to redeem within ninety days from that date by paying the total sum, with interest from the date of that decree and the costs in the Circuit Court (except the costs made after November 22, 1910), and that, if such payment be made defendant convey the premises to complainants, and that if redemption be not so made, defendant be entitled to a further decree, barring complainants from all equity of redemption and dismissing the bill.

*Affirmed in part, reversed in part and remanded with directions.*