## JACOB BREMER *et al.*

*v.*

## THE CALUMET AND CHICAGO CANAL AND DOCK COMPANY.

*Filed at Ottawa November 11, 1887.*

1. FREEHOLD—*whether involved—on bill to remove cloud on title—trying legal titles in equity.* Except under special circumstances, a freehold is not involved in a bill to remove an alleged cloud upon title to land, although it is necessary for the complainant to allege title in his bill. Courts of equity will not, under the guise of removing a cloud, try legal titles, but will remit them to a court of law.

2. SAME—*the particular case.* A, the owner of real estate, sold the same to B, who gave therefor his three notes for the unpaid price, bearing eight per cent interest, secured by deed of trust on the premises, and on a sale under the trust deed A became the purchaser, and received a deed. B made a conveyance to C, which A sought to have set aside as a cloud on his title. B and C answered, and by cross-bill set up, that by a subsequent arrangement with A new notes were given for the price, without interest until their maturity, secured by a mortgage without any power of sale, and sought to have the sale under the trust deed set aside, and this charge was denied. The court denied the specific relief prayed, but under the general prayer allowed a redemption from the trustee's sale, thereby practically setting aside the trustee's deed: *Held,* that on the issues under the cross-bill the question of a freehold was involved, and therefore a writ of error did not lie from the Appellate Court, and this, regardless of the fact whether A objected to the decree on the ground it gave him money in place of the land.

3. ALLEGATIONS AND PROOFS—*in chancery.* In a chancery suit, proofs without corresponding allegations in the bill are just as unavailing to a party as allegations without proof.

WRIT OF ERROR to the Appellate Court for the First District; —heard in that court on writ of error to the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

Mr. EDWARD ROBY, for the plaintiffs in error:

The decree of foreclosure of the trust deed was error. The Calumet and Chicago Canal and Dock Company, in its bill, did not seek to foreclose, and the matter of foreclosure was not before the court. *Cable* v. *Ellis,* 120 Ill. 144.

Although the complainant may make out, by proof, a case which entitles him to relief, yet he can not recover upon a bill, the allegations of which are not adapted to the case proved. *Gibson* v. *Carson*, 3 Ala. 421; *Clements* v. *Kellogg*, 1 id. 330; *Piatt* v. *Valter*, 9 Pet. 405; *Lindsay* v. *Etheridge*, 1 Dev. & B. Eq. 36; *Maher* v. *Bull*, 44 Ill. 97; *Carmichael* v. *Reed*, 45 id. 108; *Hall* v. *Towne*, 45 id. 493; *Barrett* v. *Sargeant*, 18 Vt. 305.

This case is not one in which a freehold is involved. The matter in dispute on the writ of error forms the test.

Mr. JOHN B. COHRS, for the defendant in error:

Under the decisions of the Supreme and Appellate Courts it seems that a freehold is involved, and that the writ of error should be dismissed by the Appellate Court. *Hollingsworth* v. *Koons*, 13 Bradw. 158; *Monroe* v. *VanMeter*, 100 Ill. 347; *Theological Seminary* v. *Gage*, 103 id. 175; *Cheney* v. *Teese*, 113 id. 444; *Lehmann* v. *Rothbarth*, 111 id. 185; *Shelton* v. *Blake*, 115 id. 275.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

The Calumet and Chicago Canal and Dock Company, claiming to be the owner in fee of lots 1 and 2, block 47, Iron-workers' addition to the village of Hyde Park, brought its bill to the December term, 1885, of the Superior Court of Cook county, to have set aside, as a cloud upon its title, a deed for the same property, executed by Charles G. Harris to the defendant Bremer. Harris purchased this, with other property of the company, receiving a warranty deed for the same, and to secure the deferred payments, executed to the company a deed of trust upon it, and subsequently sold it to other parties, through whom Bremer claims. The company repurchased the property at the trustee's sale under the trust deed, and received from the trustee a deed therefor, which is the title it relies on in this litigation. The Superior Court, on the hear-

·ing, denied the specific relief prayed, but under the prayer for general relief entered a decree permitting Harris, and those claiming under him, to redeem from the trustee's sale, and this decree was affirmed by the Appellate Court for the First District, whence the case is brought here for review.

The bill charges, in substance, that the complainant, on the 10th of March, 1874, being the owner in fee of the west half of the north-west quarter of section 17, town 37 north, range 15 west, of which the lots in question are a part, by its deed of that date, for the consideration of $40,000 paid and to be paid, sold and conveyed the same in fee to Charles G. Harris, said deed being duly recorded on the 28th of May then next following; that to secure the unpaid purchase money, the said Harris delivered to complainant his three promissory notes of that date, for the sum of $10,000 each, payable, respectively, March 12, 1875, March 12, 1876, and March 12, 1877, with interest thereon at the rate of ten. per cent per annum; that to secure said notes, the said Harris executed a deed of trust upon the purchased premises to George W. Smith, as trustee, authorizing him to sell the same upon default of payment of said indebtedness, or any part thereof; that said trust deed bore date March 12, 1874, and was recorded on May 28th next following; that Harris· and one William H. Colehour, on the 10th of March, 1875, conveyed, by warranty deed of that date, the south twenty acres of the eighty-acre tract in question to George H. Sturgis, in trust for Samuel Hale, Joseph H. Brown and Joseph T. Torrence, which deed was recorded June 5, 1875; that on the 16th of October, 1875, Harris made, acknowledged and caused to be recorded a plat of the remaining sixty acres of said land, to be known and designated as the Ironworkers' addition to the village of Hyde Park, which plat was duly approved by the corporate authorities of said village; that on November 6, 1875, by deed of that date, recorded November 26, 1875, Harris conveyed the entire eighty-acre tract to the said William H. Colehour; that the

latter, on the said 6th day of November, 1875, conveyed the lots in question to John Bremer, plaintiff in error; that Harris having made default in the payment of the first note, the whole indebtedness was declared due, as provided in the trust deed, and the trustee, at the request of the company, proceeded to advertise and sell the property, including the lots in question; that the same was sold and struck off to the company on the 25th of April, 1876, for the sum of $30,000, and Smith, the trustee, thereupon executed to the company a deed, in due form, for the premises, which was properly recorded on the 17th of May, 1876. Bremer answered, and also filed a cross-bill, making the company, and his grantor, William H. Colehour, parties. The latter, on appearing, also filed a cross-bill, making the company, Bremer, Charles W. Colehour and Edward Roby parties defendant.

All these parties claim through Harris, and adversely to the company. Their defence to the company's bill, and their claim for relief under their respective cross-bills, depend substantially upon the same alleged state of facts. They all concede that the original agreement with respect to the purchase of the property provided for the conveyance of it by the company to Harris, and for the making of the trust deed and the three notes by him to the company, as charged in the original bill, with the qualification that the notes were to bear no interest until after due, when, as all parties agree, they were to bear ten per cent per annum. On the other hand, the company claims they were to draw eight per cent interest from date till due, and the notes produced by them in evidence are so drawn. To this it is rejoined by plaintiffs in error, that these notes are not the ones prepared under the original agreement; that, on the contrary, they were executed and delivered under a subsequent agreement, which annulled the former one, and was adopted by the parties in lieu of it.

It is claimed by plaintiffs in error, and is so set up in their pleadings, that the Smith trust deed, and the three notes se-

cured by it, (which, as they allege, were drawn without interest until after due,) were drawn up and signed by the proper parties, and placed in the hands of the secretary of the company until certain incumbrances upon the property could be removed; that before this was done, the parties entered into a a new agreement annulling the former one, and that in consequence of it there never was any delivery of the Smith trust deed or the series of notes belonging to it. By the new and substituted agreement, Harris, as is alleged, was to execute to the company, for the deferred payments, his three promissory notes, for $10,000 each, bearing date March 12, 1874, payable at the company's office in one, two and three years, respectively, with interest at the rate of eight per cent per annum till due, and ten per cent per annum after due, "to be secured by a mortgage, without power of sale, to A. S. Downs, the secretary of the company, as trustee, securing $875 of said principal, with the interest to grow due thereon, on each of said blocks of said land of five acres each, with the provision that any lot or lots of such subdivision should, from time to time, be released from the lien of said mortgage upon the payment of $50 of said principal, with interest thereon, for each lot so released." This substituted agreement, it is alleged, was fully carried out, though in attempting to do so, as is claimed, Harris, by mistake, acknowledged the Smith trust deed instead of the Downs mortgage, but that on discovering the mistake, the latter was also acknowledged and delivered to the company. It is further charged that the first series of notes belonging to the Smith trust deed was returned by the company to Harris, and by him destroyed, but that the company, though promising to do so, failed to return the deed. The defendant in error contends that this entire defence and claim for relief under the cross-bills is without any foundation in fact.

The evidence upon the facts, outside of the conveyances referred to in the pleadings, is conflicting; but in the view we take of the case it will not be necessary to determine upon

which side of the controversy the truth is to be found. Nor will it be necessary to consider a number of other matters in the record which counsel have discussed in the briefs.

While the question is not at all pressed upon our attention, yet, upon mature consideration, we are of opinion that the Appellate Court should not have assumed jurisdiction of the cause, but should have dismissed the writ of error, on the ground that the case involves a freehold. The defendant in error not only claimed the fee in the property, but he held a deed purporting to convey one, and which, in form, was not only legally sufficient to pass one, but was manifestly intended by both the parties to it to have that effect. By the decree rendered, this deed has been practically set aside, and may result in forcing the company to accept a sum of money in lieu of it. The fact that the company does not object to the decree on this ground, for the reason that it may prefer the money to the land, does not at all affect the question. This question does not arise merely by reason of the formal allegation in the original bill that the company is the owner in fee of the property. Such an allegation is always necessary when the owner in fee files a bill to remove an alleged cloud upon his title. Nevertheless, except under special circumstances, a freehold is never involved in that class of cases, for courts of equity will not, under the guise of removing a cloud, try legal titles, but will refer them to a court at law. The question here arises rather from the issues upon the cross-bills, wherein it is claimed, that by virtue of the company's deed to Harris he acquired the fee to the land in question, and which he, and those claiming under him, still hold, as they claim, subject to the Downs mortgage. The company replies, that no such a mortgage as the Downs mortgage was ever executed, and that all that is said about it, and the notes accompanying it, is a pure fabrication, and that whatever title Harris, or those claiming under him, acquired through the company's deed, to him, was cut off and forever barred by

Smith's sale and conveyance of the property to the company, under the trust deed made by Harris to Smith. There is no pretence that Smith's deed to the company can in any view be regarded as a mortgage, for, as already seen, it is absolute in form, and was clearly intended to be so in legal effect, by the party making it as well as by the party receiving it. Moreover, there is nothing alleged, either in the original bill or either of the cross-bills, which would warrant the court in treating it as a mortgage. Nor is there anything alleged, in either the bill or cross-bills, that would authorize Harris, or those claiming under him, to come in and redeem from the trustee's sale, for, as already seen, by the original bill the complainant is simply asserting an absolute title, and asking to have the deed under which the other parties claim set aside as a cloud on its title, and the latter say that the Smith trust deed was never delivered, and consequently never became operative. Such being the allegations in the bill and cross-bills, there was a mere conflict of titles involving a freehold.

Whether the proofs, without regard to the pleadings, would warrant the decree rendered, is a question not important to consider, as the decision of it could not affect the conclusion to be reached, the one way or the other, for nothing is better settled than that proofs without allegations are just as unavailable as allegations without proofs. 1 Daniell's Ch. Pr. *434, and notes.

As already indicated, we are of opinion that the Appellate Court erred in taking jurisdiction of the cause, and for that error its judgment will be reversed, and the cause remanded with directions to dismiss the writ of error.

*Judgment reversed.*