165  277
83a 340
165    277
203  ¹139
109a ¹602

EDWARD ROBY

*v.*

THE CALUMET AND CHICAGO CANAL AND DOCK CO. *et al.*

*Filed at Ottawa November 9, 1896—Rehearing denied March 6, 1897.*

1. RES JUDICATA—*matters properly involved are determined though not raised in original suit.*  A judgment or decree is conclusive between the parties and those in privity with them, not only as to what was ostensibly determined thereby, but also as to those matters properly involved which might have been raised and determined.

2. SAME—*party to final affirmed decree is bound thereby.*  After the Supreme Court has decided a chancery case and settled the equities, one of the parties cannot bring the former proceedings before the court for a second adjudication on cross-bill, nor can such proceeding be re-litigated by the parties under an original bill except for fraud or collusion.

3. PRACTICE—*power of trial court when case is remanded with directions.*  Where the Supreme Court determines the merits of a case, and remands it with directions as to the judgment or decree to be entered, the trial court cannot re-try the cause, allow amendments or the filing of other papers, or do anything not in conformity to the remanding order.

4. PLEADING—*a bill seeking to litigate matters already res judicata is obnoxious to demurrer.*  A bill filed by a party to a former suit which shows on its face that it seeks a re-litigation of matters already *res judicata*, and which contains no averment of fraud or collusion in the former suit, is demurrable.

5. REDEMPTION—*party failing to redeem within time decreed is forever barred.*  The time within which redemption must be made under a decree rests in the sound discretion of the court, and if a party neglects to redeem within the time allowed him by the decree his right is forever barred.

6. SAME—*purchase of "new right" will not revive barred right to redeem.*  A purchase *lis pendens*, by a party whose right to redeem lands is barred, of a certificate of sale, on execution, of the interest of another party to the lands whose redemption right is also barred, does not revive the former party's right to redeem, although he obtains the certificate from an innocent purchaser at the execution sale.

APPEAL from the Superior Court of Cook county; the Hon. W. G. EWING, Judge, presiding.

EDWARD ROBY, *pro se:*

The assignee of the equity of redemption may redeem although the equity has been abandoned for a considerable time. Coote on Mortgages, (4th ed.) 1076.

The hearing and decree may be had and entered on the original bill at one time and entered on the cross-bill at a later term. *Beauchamp* v. *Putnam,* 34 Ill. 381; *Davis* v. *Christian Union,* 100 id. 318.

The equity of redemption can only be barred by a valid execution of the power. 2 Jones on Mortgages, 1769.

COHRS & GREEN, for appellee the Calumet and Chicago Canal and Dock Company.

OSBORN & LYNDE, for appellees C. R. Cummings and O. S. Gaither.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

The case of *Bremer* v. *Calumet and Chicago Canal and Dock Co.* was before this court at the September term, 1887, and is reported in 123 Ill. 104. The same case was again before this court at the March term, 1888, and is reported under the same title in 127 Ill. 464. The record in the case was again before this court in *Roby* v. *Calumet and Chicago Canal and Dock Co.* and is reported in 137 Ill. 289. We will not here repeat the facts shown in the case as stated in those opinions.

When the case was before this court as reported in 127 Ill. 464, the decree was reversed, and remanded with directions. The error assigned in the appeal in the case as reported in 137 Ill. 289, was, that the court refused to amend and modify its decree to conform to the mandate issued under the judgment as entered in the opinion as reported in 127 Ill., and the judgment of this court entered under that assignment of error was to remand the cause, with directions to conform its decree to the man-

date of this court on the former appeal. After the cause
was remanded this appellant, on January 30, 1892, filed
his bill in the Superior Court of Cook county, alleging
that on March 10, 1874, defendant, the Calumet and Chi-
cago Canal and Dock Company, being the owner of all
the west half of the north-west quarter of section 17,
township 37, range 15, in Cook county, Illinois, sold and
conveyed the same to Charles G. Harris, by deed bearing
date on that day, for $40,000, which deed was recorded
in book 381, page 442; that $10,000 was paid in cash at
the date of said purchase; that said Harris executed and
delivered to said company his three promissory notes,
payable to it or order, bearing date March 12, 1874, and
bearing interest at the rate of ten per cent per annum
after due until paid; that the said notes were for $10,000
each, and payable, respectively, on or before the 12th
days of March in the years 1875, 1876 and 1877, at the
office of said company, in Chicago, and were given for
part of the purchase price of said land; that said notes
did not bear interest until the maturity or coming due
thereof, respectively; that to secure the payment of said
notes said Harris signed and sealed a certain trust deed
purporting to convey all said land to George W. Smith,
to have and to hold the same in trust; that in case of de-
fault in the payment of said promissory notes or interest,
or either, or any part thereof, or in case of a breach of
any of the agreements in said trust deed mentioned, then,
on the application of the legal holder or holders of said
notes, or either of them, the trustee was to enter into
and upon the said premises, or any part thereof, and to
receive all rents, issues and profits thereof, and, with
or without such entry, to sell and dispose of said prem-
ises or any part thereof, either *en masse* or in separate
parcels, as he should prefer, together with all the right,
title, benefit or equity of redemption of the said Harris,
his heirs or assigns therein, at the court house door, for
the best price the same would bring in cash, ten days'

notice of such sale having been first given in one of the newspapers at that time published in the said city of Chicago, thirty days before the day fixed for such sale, and to make, execute and deliver to the purchaser or purchasers at such sale the deed or deeds for the premises sold, and out of the proceeds of such sale, after first paying all costs of advertising and sale, commissions and all expenses of said trust, and all moneys advanced for taxes, assessments or liens on said premises, with interest thereon at ten per cent per annum, to pay the amount of principal and interest which should appear by said promissory note or notes to be unpaid at the time of such sale, rendering the overplus, if any, unto said Harris, his legal representatives or assigns, on reasonable request; that the trust deed was recorded May 28, 1874, in book 387, page 147; that said trust deed gave to the said Smith no power to sell said land, or any part thereof, except upon the application of the legal holder or holders of the said notes, and upon the notice and the place prescribed, as above stated, and then only for payment of said enumerated expenses of said trust, and the amount of principal and interest which should appear by said promissory notes to be unpaid at the time of such sale; that the legal title to said premises so conveyed to said Harris, as aforesaid, was held by said Harris in trust for orator and Charles W. Colehour, as equal tenants in common; that orator paid the said $10,000 of said purchase money which was paid in cash, and also paid to said company $500 on the 12th day of March, 1874, which ought to have been applied, and afterwards was on the 28th day of June, 1886, by said company applied, on the principal of said deferred payments; that afterwards, during the month of April, 1874, the said three promissory notes in said trust deed described were by said Calumet and Chicago Canal and Dock Company surrendered to said Harris, to be by him destroyed, and the same were canceled and destroyed by the joint action and full

consent of both said Calumet and Chicago Canal and Dock Company and said Harris; that in lieu thereof said Harris made, executed and delivered to said company his three promissory notes, each being for the sum of $10,000 of principal, and bearing date March 12, 1874, and bearing interest from date to the maturity thereof, at the rate of eight per cent per annum, payable annually, and after the maturity thereof at ten per cent per annum until paid; that said notes were made payable, respectively, on or before the 12th days of March in the years 1875, 1876 and 1877, to the said Calumet and Chicago Canal and Dock Company, at its office in Chicago; that the last mentioned notes were not mentioned in or described by said trust deed to the said George W. Smith, but, on the contrary, one of the last mentioned notes due on the 12th day of March, 1875, was a promise to pay the sum of $10,800 on that day, whereas the note described in said trust deed due on said 12th day of March, 1875, was a promise to pay $10,000 on that day, and no more; that said note due on March 12, 1876, (which was made in lieu of the note maturing at that date and described in said trust deed,) was a promise to pay $800 on March 12, 1875, and $10,800 on March 12, 1876, (in all $11,600,) whereas the note described in said trust deed due on said March 12, 1876, was only a promise to pay $10,000 on that day, and no more; that said note due on March 12, 1877, (which was made in lieu of the note maturing at that date and described in said trust deed,) was a promise to pay $800 on March 12, 1875, $800 on March 12, 1876, and $10,800 on March 12, 1877, (in all $12,400,) whereas the note described in said trust deed due on said March 12, 1877, was only a promise to pay $10,000 on that day, and no more; that said trust deed, after describing the notes first given in the words following, to-wit: "Three certain promissory notes bearing even date herewith, executed by said Charles G. Harris and made payable to the Calumet and Chicago Canal and Dock Company or order, with interest at

ten per cent per annum after due until paid, as follows, to-wit: Said notes being for $10,000 each, and payable, respectively, on or before the 12th days of March in the years 1875, 1876 and 1877, at the office of said corporation in Chicago, said notes being given in part payment of the purchase money for the real estate hereinafter described; and whereas, the said Charles G. Harris is desirous of securing not only the prompt payment of said promissory notes, but also of effectually securing and indemnifying the said Calumet and Chicago Canal and Dock Company for or on account of any assignment, endorsement or guaranty of the same,"—proceeded with the words of conveyance of the land upon the express trusts above stated and afterwards continued in the clause following, referring to said promissory notes bearing no interest until after due, and no others, to-wit: "And it is stipulated and agreed that in case of default in the payment of said promissory note or notes, or either of them, or of the interest thereon as aforesaid, or any part thereof, or of a breach in any of the covenants and agreements herein mentioned, then and in that case the whole principal sum hereby secured and the interest to the time of sale shall, at the option of the legal holder or holders of said promissory notes, without notice thereof to said party of the first part, his heirs, assigns or legal representatives, become at once due and payable, and the premises hereby conveyed may be sold in like manner and with the same effect as if the said indebtedness had matured in course;" that though said Calumet and Chicago Canal and Dock Company may have retained a vendor's lien on said premises, and though said deed of the legal title to said Smith showing on its face that it was given to secure payment of part of the purchase price of the above described premises might properly estop orator and said Colehour and said Harris, and all claiming under them or either of them, from denying that the notes given in lieu of those described in said trust deed, and for $4800

more than those described in said trust deed, were not
intended to be described in and secured by said deed of
trust, still, because they were not in fact described in
said deed, said Smith had, in fact, no power to sell said
land on the application of the holders of them, they
being other and different notes and for larger amounts
than those described in such deed, because of the pro-
visions of the chapter of the Revised Statutes of the
State of Illinois entitled "Frauds and Perjuries," and
especially the section thereof which provides that "all
declarations or creations of trusts or confidences of any
lands, tenements or hereditaments shall be manifested
and proved by some writing signed by the party who
is by law enabled to declare such trusts, or by his last
will in writing, or else they shall be utterly void and
of no effect;" that by survey and plat acknowledged by
said Harris October 16, 1875, and approved by the board
of trustees of the village of Hyde Park on October 30,
1875, and recorded on November 26, 1875, in the office of
the recorder of deeds, said west half of the north-west
quarter of said section 17 was subdivided into blocks
and lots, with streets, alleys, etc., as shown by said plat,
said subdivision being called Ironworkers' subdivision,
and the blocks into which the said land was subdivided
being numbered consecutively from 46 to 61, inclusive;
that by deed dated November 6, 1875, and recorded No-
vember 26, 1875, said Harris conveyed to William H. Cole-
hour all said west half of said north-west quarter of said
section 17, containing eighty acres of land, and there-
under said William H. Colehour took the legal title of the
said land upon trust, as to one undivided half thereof, in
favor of orator, as said Harris had held the same; that
by deed dated November 16, 1875, and recorded Janu-
ary 27, 1876, William H. Colehour conveyed unto Jacob
Bremer lots 1 and 2 of block 47, and lots 41 and 42 of
block 48, in the said subdivision, for the consideration of
$870, as is hereinafter more fully stated; that said Wil-

liam H. Colehour also conveyed divers other lots in said subdivision, as is hereafter stated; that afterwards, pretending to act under the powers in said trust deed purported to be granted to him in trust, on April 25, 1876, said George W. Smith pretended to sell all said west half of the north-west quarter of section 17, township 37, range 15, to the Calumet and Chicago Canal and Dock Company for the sum of $30,000, under and pursuant to a notice published twenty-five times from and after the 27th day of March, 1876, and not otherwise; that said Smith conveyed to said company the legal title in him vested, by his deed executed and delivered to said company, bearing date April 25, 1876, and recorded May 17, 1876, by which deed and the record thereof it distinctly appeared that said Smith had not pursued the power apparently given in the trust deed to him, and that the pretended sale by him to said company, and the conveyance of the legal title to said company in and by said deed shown, had not operated to bar or foreclose the equity of redemption of the said Harris and his assigns, and those claiming under or through them, or either of them, but that the said title so vested in said company was held by it in mortgage only and as security for the payment of the said debt of said Harris, and was and would remain subject to redemption until foreclosed in chancery, or by some other process provided by law; that said trustee's deed, and the record thereof, showed that said trustee had not given the notice required in the trust deed through which he claimed to derive his power in trust, and which he referred to and described in said trustee's deed; that afterwards, by deed bearing date August 22, 1876, said Calumet and Chicago Canal and Dock Company conveyed and quit-claimed unto Joseph H. Brown, Samuel Hale, Joseph T. Torrence, George W. Hale, Charles B. Hale, Richard Brown, and the heirs and executors of Richard Bonnell, deceased, all interest in the west half of the north-west quarter of section 17.

The bill then sets forth the pleadings, decrees, etc., in the case of the Calumet and Chicago Canal and Dock Company against Jacob Bremer, and the several opinions, judgments and mandates of this court filed and entered when the case was before us as reported in 123, 127 and 137 Ill.; avers a right to redeem, and that appellee had made many conveyances, by reason of which there were new parties in interest, and that by such sales of real estate appellee had received large sums of money, etc.; avers a new interest, as follows: "Orator shows that at the September term, 1878, of this court one Oliver H. Horton recovered a decree and judgment against said William H. Colehour and Charles W. Colehour for $4113.58; that execution was duly issued to the sheriff of Cook county thereon on October 4, 1878, who duly received the same on that day and duly returned the same on January 2, 1879, no part satisfied; that on July 9, 1885, a *pluries* writ of execution was duly issued on said judgment or decree to said sheriff of Cook county, on which said sheriff duly sold all the right, title and interest of the said defendants, William H. Colehour and Charles W. Colehour, in and to said west half of the north-west quarter of section 17, township 37, north, range 15, east, in Cook county, on August 4, 1885, to one Parker R. Mason for $1550.17, and duly issued to him a certificate of sale thereof; that afterwards, on August 11, 1885, said Mason, by endorsement on said sheriff's certificate of sale, for value received, sold, assigned, transferred and set over the said sheriff's certificate to one Gregory T. Van Meter, and on September 5, 1891, said Van Meter, by endorsement on said certificate, for value received, sold, conveyed, assigned, transferred and set over said sheriff's certificate of sale, and all right, title and interest therein and in and to the premises therein described, unto your orator, and afterwards orator delivered said sheriff's certificate to the sheriff of Cook county, who on the......day of.........., A. D. 1891, duly issued

to your orator the proper sheriff's deed thereon, whereby he conveyed unto your orator all the title, estate and interest of said William H. Colehour and Charles W. Colehour in and to said premises, which deed was duly recorded and is ready to be produced, and thereby your orator became vested with the right to all said eighty acres of land free and clear from all rights and claims of said William H. Colehour and Charles W. Colehour, or either of them. Your orator charges and insists that said Oliver H. Horton, plaintiff in said judgment, had no notice, other than by the records of said trust deed to said Smith, of the lien claimed thereunder by the said Calumet and Chicago Canal and Dock Company, and said purchaser at said judgment sale stood in the shoes of said plaintiff in said judgment, and was bound by the recorded notice of the lien of said company, to-wit, by the words of said recorded trust deed; and your orator, in the right of such judgment creditor and of said purchaser at said judgment sale, has the right to redeem said premises by paying the amount specified in said recorded trust deed to said Smith, which amount is $4800 less than the amount found by said decree to be due upon the notes held by said company."

The bill prays for an accounting and a right to redeem, etc., and for the delivery of possession. To this bill a demurrer was interposed and sustained and the bill dismissed. From the decree dismissing the bill this appeal is prosecuted.

To the original bill filed by the Calumet and Chicago Canal and Dock Company against Jacob Bremer the defendant filed his answer and cross-bill, and to the cross-bill filed by the defendant, William H. Colehour and the complainant in that original bill were made parties defendant. To that cross-bill of Bremer the defendant filed answers and William H. Colehour filed his cross-bill, to which the complainant and defendant to the original bill, and Charles W. Colehour and Edward Roby, were made

defendants.   By this cross-bill William H. Colehour al-
leged, among other matters, that on March 10, 1874, said
company being the owner in fee of the west half of the
north-west quarter of section 17, (eighty acres,) subject
to a large mortgage and tax title, agreed with Roby to
sell and convey said land to Harris for $40,000,—one-
fourth cash when clear title should be conveyed, and
$30,000 in notes of Harris, of $10,000 each, due in one, two
and three years, without interest before maturity but
bearing interest after maturity at ten per cent; that the
company, on March 16, 1874, signed and sealed its deed
bearing date March 10, 1874, and Harris executed his
three promissory notes, bearing date March 12, 1874, for
$10,000 each, payable to the company in one, two and
three years from date, bearing no interest before matu-
rity but bearing interest after maturity at the rate of ten
per cent, and to secure the same executed a trust deed to
George W. Smith, dated March 12, 1874, conveying said
land, which trust deed was, about March 16, placed with
the notes, all the papers to await the clearing up of the
title, and Roby paid said company $500 as an earnest on
the same; that afterwards, on March 21, 1874, the tax title
not having been removed, and the mortgage embracing
this with other lands, amounting to a million dollars, not
having been removed, the company, being desirous that
the deferred payments should bear interest from the day
of sale at the rate of eight per cent per annum, agreed to
a different mortgage and different notes, and that there
should be no power of sale, and that the lands should be
subdivided and a charge fixed on each block and each
lot released for $50, and that agreement was carried out
by the giving of a mortgage to A. S. Downs, secretary of
the company, and new notes, those described in the trust
deed to Smith being surrendered and canceled; that the
down payment of $10,000 was made by two notes of Har-
ris, of $5000 each, guaranteed by Charles W. Colehour and
Edward Roby; that afterwards Charles W. Colehour and

Edward Roby paid said two notes, and by mistake the trust deed to Smith was put upon record while the real trust deed was kept by the company. The bill sets out the particulars of the real trust deed or mortgage to Downs containing no power of sale and providing for a specific amount ($1875) to be secured upon each block and $50 a lot in the subdivision and for release upon the pay-ment of such sum, and the way the mistake was made in recording the other, and says that Charles W. Colehour and Roby were interested with Harris in the purchase. It also sets out the subdivision by Harris and his deed to William H. Colehour, and alleges that at the same time Charles W. Colehour assigned and released to William H. Colehour all his interest in the land for a valuable consideration, and that William H. laid out all streets, and had an auction, and sold and conveyed lots subject to $50 each, with the approval of the company. It then sets out the pretended sale by Smith, and the notice and pretended conveyance to the canal and dock company for $30,000, and says that the sale is invalid for want of publication of a notice according to the terms of said deed; alleges that the company was not at the time the holder of the notes described in said deed to George W. Smith, and that the sale and deed were invalid in various ways; sets out that a large number of the lots had been sold to different individuals, each of whom was entitled to redeem from said mortgage by the payment of $50 per lot; that the plaintiff in the cross-bill, and those claim-ing under him, were in possession and had always been in possession of the property; alleges that on July 5, 1883, plaintiff conveyed to Charles W. Colehour certain lots therein mentioned, and on July 19, 1883, contracted to convey to him all the residue of the land.

The prayer of the cross-bill was to set aside the trus-tees' deed, and for an accounting and relief, etc. The cross-bill as amended, and making Roby a party, was filed January 15, 1885, and on the same day Edward Roby

answered, substantially admitting the allegations of the cross-bill to be true.

On the pleadings thus made an interlocutory decree was first entered on December 26, 1885, finding the rights of the parties and finding the right of redemption in Roby and others, and referring the cause to the master in chancery to take proof and state the amount due, etc. Subsequently, on June 28, 1886, the report of the master having been filed, a final decree was entered finding the amount due the Calumet and Chicago Canal and Dock Company was $73,873.20. The decree concludes as follows: "And it is further ordered, adjudged and decreed, that unless the persons entitled to redeem said premises shall pay to the said Calumet and Chicago Canal and Dock Company the said sum of money last above mentioned, with the interest thereon, within ninety days from this date, according to the tenor and effect of the decree entered in this cause at the December term, A. D. 1885, of this court, then and thenceforth, from and after the expiration of said period of ninety days, the said persons, and each of them, shall be absolutely and forever barred of and from all right and equity of redemption of, in and to all and singular the premises in said decree mentioned and described."

A writ of error having been sued out from the Appellate Court for the First District, and an appeal to this court from the judgment there, such proceedings were had as resulted in the opinion in 123 Ill. Thereafter a writ of error was sued out of this court to reverse the decree of the Superior Court of Cook county, and the opinion in 127 Ill. was filed, where it was directed that "the decree in all respects is affirmed, except in so far as it assumes to give affirmative relief by directing Bremer to convey, or otherwise, and in that respect it is reversed and the cause remanded to the court below, with directions to that court to modify and amend the decree to conform to the views herein expressed."

165—19

When the mandate of this court was filed in the Superior Court a certain amendment of the decree was entered and decree made, and an appeal was taken from the decree so amended and the opinion in 137 Ill. was announced. By these two opinions it was held that that part of the decree which requires Bremer, in default of payment, to execute a deed to the Calumet and Chicago Canal and Dock Company was error, as was also so much of the decree as confirms the sale made by Smith, trustee, under the Harris trust deed, which bars and forecloses the equity of redemption of Edward Roby and others, and assumes to vest title in the canal and dock company in fee simple, free and clear of all right and claim, by way of equity of redemption or otherwise, of Bremer, the Colehours, Edward Roby, and those claiming under them or either of them, in and to the whole eighty-acre tract of land described, and estops them (Colehour, Bremer and Roby,) from setting up any claim, right, title or equity of redemption in said land. The decree was by these adjudications affirmed, except as to the affirmative relief thus granted.

Those parts of the decree which were affirmed, both the interlocutory and final decree, so far as necessary to consider in this opinion, are stated in the opinion in *Bremer* v. *Calumet and Chicago Canal and Dock Co.* 127 Ill. 464, where it was held the cross-bills were in effect bills to redeem, and under the prayer for general relief it was competent to grant a right to redeem, and the decree was quoted from as follows: "And the court further finds from the evidence, that in consequence of irregularities and defects in the notice and proceedings by the said George W. Smith, trustee as aforesaid, in making the sale under said deed of trust from the said Charles H. Harris to said Smith, as trustee, by virtue of the power of sale therein contained, the said Jacob Bremer, Charles W. Colehour, William H. Colehour and Edward Roby, or any or either of them, is entitled to have said sale of said

property described in said deed of trust set aside, upon such terms and within such time as may be prescribed by the court, upon paying to the Calumet and Chicago Canal and Dock Company the amount now due upon said promissory notes, including the interest thereon, as specified in said deed of trust, and upon paying to the said Calumet and Chicago Canal and Dock Company the amount paid by the said dock company for taxes upon said land, and interest thereon, as provided in the said deed of trust." And in that case the court further held: "An objection is urged that the decree should have provided for a statutory period of redemption. This is not tenable. The time rests in the sound discretion of the court, in view of all the circumstances. In such cases the complainant should be prepared to pay at once, and his bill, when properly framed, offers to make payment. The usual time allowed is six months, but that is not obligatory in all cases. We cannot say that the court here abused its discretion in that respect." By this opinion there was an affirmance of the decree by which the right of redemption was declared, the amount necessary to pay to redeem was found and the time within which the redemption was made was declared. By that affirmance and the order remanding, with directions as·to entering the decree, the rights of the parties were adjudicated.

This bill is for an accounting and for a right to redeem. Whilst it is true Roby, the complainant in this bill, had no cross-bill filed, he was a party defendant to the cross-bill of Colehour, which was for redemption, etc., and which he answered and substantially admitted. The substantial cause of action in the Colehour cross-bill which the complainant in this bill admitted, and the substantial cause of action as stated in this bill, with the exception of what is averred as a new interest, are therefore the same.

A judgment or decree is conclusive between parties and their privies not only as to what is ostensibly de-

termined, but of such other matters as were properly involved and might have been raised and determined. (*Hamilton* v. *Quimby,* 46 Ill. 90; *Ruegger* v. *Indianapolis and St. Louis Railroad Co.* 103 id. 449; *Rogers* v. *Higgins,* 57 id. 244; *Hawley* v. *Simons,* 102 id. 115.) The decree as entered allowed a redemption by the complainant, and the amount to be paid was found and the time within which to pay was stated, and to allow another bill to be filed, whether as a cross-bill in the original action or an original bill, would be a re-adjudication of the same subject matter.

The complainant urges that this is a cross-bill in the original action, and insists it was heard on demurrer at the same time that the decree was entered in that case under the mandate ordered when the case was reported in 137 Ill. When the decree was so entered under that mandate this complainant brought that cause again to this court at the same term that appeal was prosecuted, and by the opinion in that case reported as *Roby* v. *Calumet and Chicago Canal and Dock Co.* 154 Ill. 190, the decree was affirmed. This bill does not, on its face, purport to be a cross-bill. To hold it to be a cross-bill still from 1885 to the time of the original decree and the order of this court, as made and shown by the opinion in 127 Ill., this complainant should have asserted all the rights sought to be here asserted, except as to what is averred as a new interest. To allow this filed as a cross-bill would have been a disregard of the mandate of this court as made by that opinion. The law is, where a decree or judgment is entered, and on appeal to this court full consideration is given to the facts and judgment on which the decree is based, and the merits are fully discussed and settled, and the cause is remanded with directions as to the judgment or decree to be entered, there is no power in the inferior court to which the opinion or mandate is sent to re-try the cause or allow amendments or the filing of other papers, or do any other matter or thing not in conformity to the mandate of this court. The in-

ferior court must carry out the mandate of this court, and proceed that far and no farther. (*Washburn & Moen Manf. Co.* v. *Chicago Galvanized Wire Fence Co.* 119 Ill. 30; *Gage* v. *Bailey*, id. 539; *Buck* v. *Buck*, id. 613; *Newberry* v. *Blatchford*, 106 id. 584; *Wadhams* v. *Gay*, 83 id. 250, and authorities cited.) The rule is different, however, where there is a reversal and remandment without specific directions. When a case is considered by this court on appeal, and the merits of the case are determined and equities settled between the parties thereto, one of the defendants cannot, under the guise of a cross-bill, bring all the previous proceedings before the court and thus have the court reconsider questions already passed on. (*Cable* v. *Ellis*, 120 Ill. 136.) The bill as a cross-bill was therefore not good, and the demurrer was properly sustained thereto.

Neither can a party to such proceedings as were had in the bill originally filed by the Calumet and Chicago Canal and Dock Company against Bremer, and the cross-bills in the same case, have the proceedings re-litigated under an original bill, except for fraud or collusion. That is not averred in this bill, and as the bill set forth all the former proceedings, it appeared on its face that it was an attempt to re-adjudicate what was *res judicata*. As an original bill it was obnoxious to a demurrer.

We will briefly discuss the effect of the averment of "a new right," as alleged in the bill. On January 15, 1885, Roby became a party and filed his answer to the cross-bill of William H. Colehour, and from that time on he was an active participant in that litigation and cognizant of the proceedings. After the original bill was filed, and after the filing of Colehour's cross-bill and the filing of Roby's answer, the sale under execution was made and the certificate issued. In 1891 Roby acquired that certificate. No right could be acquired by that certificate, and the deed made thereunder, greater than Colehour had. By that part of the decree affirmed in 127 Ill.

the redemption by Colehour was required to be made within ninety days, in default of which it was barred, and, his right being barred, any right acquired during the pendency of the suit against him would fall when his right failed.   His interest in the land was subject to the lien of the Calumet and Chicago Canal and Dock Company, as found by the court.   But aside from this, Roby, by his answer to Colehour's cross-bill, set up the purchase by himself and Charles W. Colehour of the lands, and in his answer Roby admits that about November 6, 1875, said Harris conveyed to said William H. Colehour his interest in said lands, to be held in trust for himself and Charles W. Colehour, and the latter released his interest to William H. Colehour.   The latter in his cross-bill sought to set aside the trustee's sale and deed.   The decree, which found a right of redemption in William H. Colehour and Edward Roby and limited the time within which they could redeem, was determined before a deed was made on the certificate of sale to the latter, and when he took the certificate of sale and acquired his deed the status of both Colehour and Roby had been fixed and determined with reference to the right of redemption.   His purchase of that "new right" was *lis pendens*, and he purchased with knowledge of the right of the canal and dock company, and that could not revive his claim which was already barred.   The bill seeks to do this by reason of this new right claimed.   The effect of the cross-bills was they were bills to redeem, and the rule is that the time within which the redemption must be made under a decree to redeem rests within the sound discretion of the court.   If the complainant neglects to redeem within the time specified his right is forever barred.   (2 Jones on Mortgages, sec. 1107.)   The rule stated in the text was announced in the case in 127 Ill., and sustained as the rule in this State.

By the decree in 1886, which was finally affirmed in all these four appeals on all questions except as to the

affirmative relief to the Calumet and Chicago Canal and Dock Company, the question is, what was taken under the sale on execution of 1885, on which, by the assignment of the certificate, Edward Roby acquired a deed in 1891? It is to be regretted the date of the sheriff's deed is not stated in the bill, as it might determine whether it was made within five years after expiration of time of redemption. If by the pending proceedings Colehour's right was barred the sheriff's deed could convey no interest. The adjudication as to all parties and privies if this is a cross-bill, as insisted by the appellant, would bar relief even as to this acquired title which is set up as a new interest.

We are of the opinion there is no error in the decree dismissing this bill, and the decree is affirmed.

*Decree affirmed.*